## Chicago & G. T. Ry. Co. v. Charles W. Hoffman, Adm'r, etc.

1. DAMAGES—*Recoverable for Negligence.*—Damages which are recoverable for negligence must be such as are the natural and reasonable results of the defendant's acts, and the consequences must be such as, in the ordinary course of things, flow from the acts, and be reasonably anticipated as a result.

2. SAME—*Proximate Damages Defined.* — Proximate damages are such as are the ordinary and natural results of the omission or commission of acts of negligence, and such as are usual and might have been reasonably expected.

3. NEGLIGENCE—*Jumping from Trains.*—Where the injury complained of is not the result of any wrongful act or negligence of the defendant, but is caused by the voluntary act of the plaintiff in jumping from the train while in motion, such jumping is the proximate cause of the accident, and he can not recover.

4. SAME—*When to be Imputed to Children.*—Negligence will be imputed to a boy eleven years of age in the absence of evidence tending to show his incapacity to exercise care.

5. SAME—*Carelessness in Children.*—Carelessness in children who are of age sufficient to exercise discretion for the avoidance of injury to themselves, when traveling on street cars, is recognized, although negligence is not imputed to children of tender age.

**Action in Case.**—Death from negligent act. Trial in the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH. Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1898. Reversed. Opinion filed May 22, 1899.

SAMUEL A. LYNDE, attorney for appellant.

This court says, speaking of the action of a boy ten years of age in attempting to jump onto a moving freight train,

jumping from the ground upon a moving freight train is dangerous. All men and all ordinarily intelligent boys of ten years of age know it to be so. Le Beau v. P., C., C. & St. L. Ry. Co., 69 Ill. App. 557; C., R. I. & P. R. R. Co. v. Eininger, 114 Ill. 79.

CASE & HOGAN and MUNSON T. CASE, attorneys for appellee, contended that the question whether or not the deceased was exercising the degree of care reasonably to be expected under the circumstances from a child of his years, was a question of fact for the jury.

This child under the decisions was of an age when he could not comprehend the danger he was incurring in attempting to get off from said moving train. See The Allurement of Infants, 31 Am. Law Review, 891; North Western Ry. Co. v. Hack, 66 Ill. 242; Hemmingway v. Chicago, M. & St. P. R. R. Co., 72 Wis. 42; Brennan v. Fair Haven & W. Co., 45 Conn. 284; East Saginaw City Ry. Co. v. Bohn, 27 Mich. 503; R. R. Company v. Caldwell, 74 Penn. St. 424; R. R. Company v. Stout, 17 Wall. 657; Wilton v. Middlesex R. R. Co., 107 Mass. 109; Wynn v. The City & S. Ry. of Savannah, 91 Ga. 345; Metropolitan St. Ry. Co. v. Moore, 83 Ga. 453; R. R. Company v. Rexroad, 59 Ark. 180; Ridenhour v. K. C. Cable Ry. Co., 102 Mo. 270; Phil. City Passenger Ry. Co. v. Hassard, 75 Penn. St. 367; Saare v. Union Ry. Co., 20 Mo. App. 211; Fetter on Carriers of Passengers, Sec. 110.

It was held in some English cases that if the child's own act directly brings the injury upon him while the neglect of the defendant is such as exposes the child to the possibility of injury, the latter can not recover damages; but these decisions have been condemned in England and are directly opposed to the current of American cases. Shearman & Redfield on Negligence, 4th Ed., Vol. 1, Sec. 73.

As a general rule it is negligence for an adult person to jump from a train of cars while in motion, but this is not an inevitable rule. In view of this exception to the general principle the plaintiff here being of such tender age and

under such great fear and excitement and with the appre-
hension that he would be carried away and beyond his des-
tination if he did not ·get off at the platform may well be
exonerated from all blame.    The age and lack of capacity
of the plaintiff must be considered in such a case, even if he
is of such age as to be *sui juris* in respect to many other
things.    2 Thompson, Negligence, 1180.

What might appear to be reasonable to a person of such
tender age might be most unreasonable to an adult person
of more discretion, and it was for the jury to take such dif-
ferences into consideration in determining the question of
contributory negligence to the plaintiff.    Barry v. Railway
Company, 92 N. Y. 289; Byrne v. R. R. Co., 83 N. Y. 620;
Berge v. Gardiner, 19 Conn. 507; Swoboda v. Ward, 40 Mich.
420; Lynch v. Smith, 104 Mass. 57; Plumley v. Birge, 124
Mass. 57.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment rendered in action on
the case by appellee against appellant, under Chapter 70 of
the Revised Statutes, which gives an action to the adminis-
trator of a deceased person, when the death of his intestate
was caused by the wrongful act, neglect or default of any
person or corporation, and which, if death had not ensued,
would have entitled the intestate to maintain an action.
The trial occurred in June, 1898, and was the second trial
of the cause.    The jury found for appellee, and assessed the
damages at the sum of $2,500, and judgment was rendered
on the verdict.    The declaration contains three counts.    It
is averred in the first count, in substance, that Charles
Hoffman, Jr., plaintiff's intestate, was a child of the age of,
to wit, twelve years, of immature discretion and imperfect
judgment; that appellant on, to wit, October 18, 1893, was
a common carrier of passengers and was operating certain
lines of railway and certain suburban trains, from a station
called Chicago Lawn, at or near Sixty-third street, about
six miles from its main station in Chicago; that it was
appellant's duty to said intestate, in the event he was about

to become a passenger, to exercise ordinary care in and about receiving and discharging passengers from its trains and to use reasonable precautions to prevent said intestate, who was about to become a passenger on a regular suburban train then due at Sixty-third street, bound north, and who was provided with a ticket for use on said train, into the city of Chicago, from getting on any other than its regular suburban train, then about due; that appellant failed to exercise any such precautions, and wrongfully, carelessly and negligently permitted said intestate to get upon the pay train at Sixty-third street station, which was there on the time of the regular suburban train, he supposing that it was the suburban train; that said intestate, on reaching Fifty-ninth street, where he expected his mother to board the train, seeing his mother, and the train not stopping, without knowledge or appreciation of the danger, and exercising due care and caution for one of his years, stepped off the train while it was moving, his head striking against the oil box of a standing car and was mortally injured, the result of which injury was his death.

The second count differs from the first in averring that it was the duty of appellant to exercise reasonable precautions to prevent appellee's intestate from getting on the pay train, or in the event of receiving him on the train, to prevent him from falling or stepping off the train before reaching his destination, and that appellee, after receiving him on the train, permitted him to stand on the platform of the pay car, etc. After the evidence was all in and before the court instructed the jury, appellant, by leave of the court, filed the third or additional count. It is averred in this count that appellant received the deceased on one of its pay trains at Chicago Lawn station as a passenger to be carried north; that it was appellant's duty, knowing his age, lack of capacity, etc., to exercise a high degree of care for his safety and to exercise care to ascertain his destination and object in boarding the train and to prevent his alighting therefrom while the train was in motion; that appellant, well knowing the premises, permitted him to ride on the

C. & G. T. Ry. Co. v. Hoffman.

platform of one of the cars, his whereabouts on the train being unknown to appellant, its servants and agents, which, in the exercise of ordinary care should have been known, and took no precautions to prevent him from riding on the platform or jumping from the train, etc.   The count concludes with a description of the manner of the accident, as do the first two counts.

It is averred in the declaration that the deceased left surviving Charles and Sarah Hoffman, his father and mother, Mabel and Sarah Hoffman, his sisters, and Wilbur Hoffman, his brother.

November 24, 1893, suit was commenced; June 15, 1898, the third or additional count was filed.

Appellant pleaded the general issue to the whole declaration and a special plea of the statute of limitations to the third count.   The court sustained a demurrer to the latter plea.

October 18, 1893, Charles Hoffman, Jr., a boy about eleven years and two months of age, rather small and slender, was sent by his mother to the postoffice from Sixtieth street, Chicago, where his parents then lived, about 11.30 or 11.45 o'clock A. M., with instructions to go thence to the train at Sixty-third street and there take the train to Fifty-ninth street, where his mother was to meet him. Appellant operated suburban trains between Chicago Lawn, or Sixty-third street, to and from its main depot in the city, and one of such trains, running north toward Fifty-ninth street and the main depot, was due at the Sixty-third street station about 12 o'clock noon.   A pay train, which the evidence tends to show, was a few minutes ahead of the regular suburban train, arrived at the Sixty-third street station about noon.   The exact time when it arrived, and the exact time when the suburban train was due, do not appear from the evidence.   The pay train consisted of an engine, a baggage car next the engine and a pay car in the rear.   The baggage car was a supply car, and contained material for distribution to agents along the line of the road.   It had two side doors and a door at each end.   The

platform of the baggage car was uninclosed, and there were steps leading up to it. The pay car had a single door at the front end and a double door at the rear end, through one of which the employes entered to get their wages, and through the other of which they passed out. At the front end of the pay car there were gates, and there were no steps by which to ascend to the front platform of the car. Woods, the brakeman, testified that he could not mount to that platform from the ground. The pay train started from Port Huron. There were no seats or other conveniences for passengers on the train; there was a peremptory order of appellant not to receive passengers on it, and the evidence is that, prior to the time of the accident, no passenger rode on it. The crew of the train consisted of John Busley, conductor, who died in the fall of 1895, before the trial, John Tighe, engineer, and Elmer E. Woods, brakeman. The braking was done from the engine by air brakes. The persons on the train, in addition to the crew, were Frank J. Thomas, the paymaster, and his assistant, and James Lietch, the supply man who dealt out the supplies. The Sixty-third street station is on the east side of the track. The train stopped there about two minutes. When it stopped supplies were unloaded by Woods, the brakeman, from the east door of the baggage car, and by him set up beside the station. Woods testified that he and the conductor rode on the rear platform of the pay car, and that during the time the train stopped at the station, the conductor remained on that platform, and was on it when the train started from the station. There was a number of people at the station, and they crowded forward as if to take the train, when the conductor and the witness, Woods, called out that it was not the train. Woods testified:

"I heard Mr. Burley say to stand back, that this was the pay car. The dummy was following and I was carrying supplies and there was a crowd around there and I asked them to stand back. I says: 'Get out of the way here; this is the pay car.'"

That notice was given that the train was not the regular

suburban train appears also from the evidence of two of appellee's witnesses, Mercelon E. Black and his wife. The former testified :

" A little boy, in front of my wife, got up onto the platform first, then my wife swung up onto the first step and I had hold of the car to swing up behind her, when some one says, ' Here comes the regular train.' I afterward learned the boy was Mr. Hoffman's son."

Mrs. Black testified :

" I got off the train because some one in the crowd yelled, ' That is not the train,' and I began to think by that time it was not, myself. There was a kind of appearance that it was not the train."

Mr. and Mrs. Black testified that the boy got on the platform of the rear or pay car, which would seem to have been impossible, in view of the uncontracted evidence of Woods, that that platform was inclosed and without steps. The boy might have got onto the rear platform of the baggage car, which was connected, as cars usually are, with the rear or pay car, and then passed from there to the front platform of the pay car. The platforms being so close together the witnesses, in the excitement of the moment, might easily have been mistaken. No one got on the train except the crew, the paymaster, his assistant, the supply man and the intestate. Woods testified that when the train started from the station he and the conductor were on the rear platform of the pay car. The evidence is that the clerks of the paymaster rode in the back end of the pay car. Woods, the brakeman, testified that he didn't see the boy get on or off the train; that he didn't notice a boy on the train at any time. Tighe, the engineer, testified that he did not see a boy on the train, nor did he see him jump off; that he did not know of the accident until about two hours after it happened. This witness also testified that the train was running about ten minutes ahead of the suburban train by his watch. Lietch, the supply man, and Thomas, the paymaster, both testified that they saw no boy on the train. If the conductor rode on the rear platform of the pay car from Sixty-Third street, a distance of about

a mile, and the boy was on the front platform of the rear or pay car, the front door of which car was, as the evidence shows, kept locked, it seems improbable, at least, that the conductor saw the boy between Sixty-third and Fifty-Ninth streets. Mrs. Black, appellee's witness, who started to get on the train but desisted when she heard some one yell, "That it is not the train," testified that as she got on the step a man stepped off the rear platform of the front car right in front of her, went hurriedly to the depot for a moment and then back to the car; that when the train started this man was on the rear platform of the front car from three to five feet distant from the boy who she says was on the front platform of the rear car, that she didn't remember seeing him look toward the boy. She says he was a small man of dark complexion, wore a cap, and looked as does a brakeman or conductor.

William C. Craven, witness for appellee, testified that he saw the deceased on the front platform of the rear car before the train started; that he, the witness, was from fifteen to twenty feet distant from the boy; that he also saw, before the train started, a man at the rear door of the front car, from four to five feet from where the boy was; that the man was looking toward the rear as the train started, facing the boy; that he was so dressed "that I took him to be a brakeman, the conductor of the train." The evidence of Wood, the brakeman, as to how he was occupied while the train stood at the station; that the conductor during that time, remained on the rear platform of the rear car, and that both he and the conductor were on that platform when the train started from the station, is inconsistent with the hypothesis that the person seen by Mrs. Black and Craven was either the conductor or the brakeman. Their testimony is reconcilable with that of Woods only on the hypothesis that the person seen by them was the paymaster or his assistant, the supply man, or his clerk, none of whom had anything to do with the operation of the train.

Mrs. Hoffman testified that she was waiting for the de-

ceased at the Fifty-ninth street station; that the train passed that station " at a pretty good speed;" that as it passed she and the deceased recognized and smiled at each other. She testified : " The boy was standing, when I saw him, between the two coaches. I am not positive whether he was on the rear platform of the front car, or on the front platform of the rear car. I am sure he was on the steps." She says that he had hold of the railing at the side of the train. The Fifty-ninth street station is west of the tracks, and the boy was on the west steps. Mrs. Hoffman testified that there was no one else on the platform where the boy was, and that she did not think any of the train men saw him when he was about to jump. When the train passed a little north of the Fifty-ninth street station, the deceased jumped from it and was killed. His mother testified : " I thought he struck the journal box of the car." The intestate had no ticket when he boarded the train at Sixty-third street. His mother testified that she had a twenty-five ride family ticket with her at Fifty-ninth street, and the claim of counsel for appellee is, apparently, that Mrs. Hoffman intended to pay the boy's fare at the Fifty-ninth street station.

It is plain from the evidence that the intestate was not received on the train as a passenger. He had no ticket and no means of paying his fare, and had there been a station between Sixty-third and Fifty-ninth streets, and the conductor, before reaching such station, had learned that the intestate was on the train, he would not only have been justified in removing him therefrom at such intermediate station, but, under appellant's peremptory order, it would have been his duty so to do. The relation of carrier and passenger not existing, the appellant did not owe to the deceased the duty arising from that relation. The evidence shows clearly and without contradiction, that persons at the Sixty-third street station, who desired to take a north-bound train, and who, by mistake, were about to take the pay train, were notified that it was not the suburban train, and that thereupon, they all, with the exception of the intestate, desisted from

attempting to take the train.  We are of opinion that the evidence preponderates in support of the proposition that none of the crew operating the train knew that the intestate was on it, and the distance from Sixty-third street to Fifty-ninth street being only about a mile, the train being a pay train on which passengers were not received or permitted, and persons at the Sixty-third street station having been notified of that fact, the front door of the rear car being locked, the front platform of that car inclosed by gates and without steps, we think it can not reasonably be held that the conductor, or any of the train crew, was guilty of want of ordinary care in not passing through the train between Sixty-third and Fifty-ninth streets, for the purpose of ascertaining whether any one was wrongfully on the train.  The proposition, however, on which appellant's counsel mainly relies is, that even assuming that appellee's intestate was riding on the platform by reason of the want of ordinary care of the trainmen, it was not a natural or probable consequence of his being there, or which might reasonably have been anticipated, that he would jump from the train after it passed the Fifty-ninth street station, and while it was in motion; that his so jumping from the train was in no degree attributable to any want of ordinary care on the part of appellant's employes, but was his voluntary act, independent of any negligence attributable to appellant, and was sufficient of itself to cause the accident, and which did cause it, and that it was the proximate cause of the accident.   In Pullman Palace Car Co. v. Laack, 143 Ill. 242, the court (p. 261) say :

" An intervening efficient cause is a new and independent force, which breaks the causal connection between the original wrong and the injury, and, itself, becomes the direct and immediate, that is, the proximate cause of an injury. (Bishop on Non-Contract Law, Secs. 42, 835, 836.)  And the test is, was it a new and independent force, acting in and of itself in causing the injury, and superseding the original wrong complained of, so as to make it remote in the chain of causation."

In Swift & Co. v. Rukowski, 67 Ill. App. 209, this court said :

" The proximate cause of an event is that cause which, in natural and continuous sequence. without interference of an efficient, independent, intervening cause, produces the result."

In Railway Co. v. Kellogg, 94 U. S. 469, the court said :

" But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Ib. 475.

The Supreme Court of this State has so held.    In Braun v. Craven, 175 Ill. 401, the court say :

" The principle is, damages which are recoverable for negligence must be such as are the natural and reasonable results of defendant's acts. and the consequences must be such as, in the ordinary course of things, would flow from the acts, and could be reasonably anticipated as a result thereof.    Proximate damages are such as are the ordinary and natural results of the omission or commission of acts of negligence, and such as are usual and might have been reasonably expected."

Counsel for appellee insist that, on account of the tender age and limited intelligence and discretion of appellee's intestate, it might reasonably have been anticipated that he might attempt to jump from the train while it was in motion.    There is no direct affirmative evidence in regard to the boy's intelligence.    We know nothing of his mental capacity or discretion, except such as may be inferred from the facts that he was about eleven years and two months old, rather small, and that his mother trusted him to go alone to the railroad station and there take the train.    In Railway Co. v. Eininger, 114 Ill. 83, the court, commenting on an instruction which submitted to the jury the question whether a minor plaintiff was of such tender age, and so immature, that the requisite capacity to exercise proper care was wanting, say :

" It was error to give this instruction.    There was no evidence as to the age or capacity or discretion of the

plaintiff introduced, more than that witnesses spoke of him as a little boy. He was, however, present in court at the trial. It appeared that he was of such age, and ability to take care for himself, as to be intrusted by his parents to attend school in a large city, at a considerable distance from home, and to go and return by himself. He was, at the time, on his return from school. There was nothing in the case tending to show that negligence was not imputable to the plaintiff by reason of his incapacity to exercise care, and such a question should not have been submitted, by instruction, to the jury."

In Cronan v. Railroad Co., 49 La. Ann. 63, the plaintiff, a boy of ten years of age, fell from the platform of a street car and was injured. The court say:

"It is urged on us, however, that negligence is not imputable to children of tender age. It is, however, equally true that carelessness in children who are of age sufficient to exercise discretion for the avoidance of injury to themselves, when traveling on street cars, is recognized. Hutchinson on Carriers, Sec. 666, *et seq.* The law does not fix this age of discretion. All that we have before us on this branch of the case is, that the parents of the boy deemed him old enough to travel by himself, and the fact he was nearly ten years of age. If, as we hold, he was not exposed to peril, and could have left the car with safety, using ordinary care, we do not think the defendant can be held liable merely and only because of the boy's age. Neither reason nor the authorities exact that the carriers of passengers shall anticipate and guard against injuries which ordinary prudence would avoid, and that prudence, it seems to us, is not dispensed with on the part of a boy placed on the car by his parents, and of that intelligence usual to the age of ten."

In Hessinger v. Dennie, 137 Mass. 197, carelessness was imputed to the plaintiff, a boy eight years and nine months old, and it was held that his negligence, waiving the question of the defendant's negligence, precluded recovery. In Masser v. Railroad Co., 68 Ia. 602, it was held that the plaintiff's intestate, who was between eleven and twelve years of age at the time of the injury complained of, was guilty of negligence which precluded recovery, and the court reversed a judgment for the plaintiff, without remanding the cause.

A boy thirteen years and one month old was held guilty

of negligence which precluded a recovery. Merryman v. Railway Co., 65 Ia. 634. The same was held as to a boy twelve years of age. Ecliff v. Ry. Co., 64 Mich. 196.

In Brightman v. Union St. Ry., 167 Mass. 113, the plaintiff's intestate, a boy about seven years and eleven months old, got on the steps of the rear platform of a street car drawn by horses, while the horses were walking. The driver saw him, but said nothing to him. Afterward, while the horses were trotting, he jumped off the car and suffered injuries which caused his death. The court say:

"The fall of the plaintiff's intestate was not due to his being allowed to remain on the steps of the car. It was caused by his voluntarily jumping off when the car was in motion. It was not a part of the defendant's duty to prevent a passenger from leaving the car while in motion, still less to prevent a trespasser from doing so."

In Schiffler v. C. & N. W. Ry. Co., 96 Wis. 141, the plaintiff, aged about seventeen years, boarded the defendant's train intending to go to Jackson. He was late at the station and for that reason failed to procure a ticket. The conductor received his fare to Jackson and informed him that the train did not stop at Jackson but that its speed would be slackened so that he might alight there. The court held that it was the conductor's duty to run the train according to the published schedule and that his promise to slow up was not binding on the company. The train, however, did slow up somewhat as it reached Jackson. After it passed some distance by the station the plaintiff jumped from it and was injured. The court after holding that the plaintiff was negligent, say:

"Even if this were not so, it is not easy to apprehend how the failure to stop the train could be the proximate cause of the plaintiff's accident. The natural consequence would be that plaintiff would be carried by the station. If this was a binding contract of carriage it would furnish ground for appropriate damages. But that the plaintiff should jump from the train while in rapid motion, was neither a natural nor probable consequence of the failure to stop the train. And so it could not well be anticipated. For that reason it was not the proximate cause of the plaintiff's accident."

In Hemingway v. Railroad Co., 72 Wis. 42, cited by appellee's counsel, the plaintiff, a boy about eleven years of age paid his fare to the conductor and told him he was going to Janesville. Under these circumstances, the court held that the conductor failed in his duty in not informing the plaintiff that the train did not stop at the depot at Janesville, and for this failure of duty the company was held liable for an injury to the boy, by reason of his attempting to get off the train as it slowly passed the depot. It was customary for the train to pass the depot, go beyond a switch, and then back up to the platform of the depot to allow passengers to alight, of which custom the plaintiff was ignorant. We do not regard the decision applicable to the facts in the present case. Our conclusion from the evidence and the law applicable thereto, is that the injury complained of was not the result of any wrongful act, neglect or default of appellant, but was caused by the voluntary act of appellee's intestate in jumping from the train while it was in motion; that the so jumping was the proximate cause of the accident, and that, had appellee's intestate survived the accident, he could not have maintained an action for the alleged injury against appellant. Consequently the appellee can not recover. At the conclusion of all the evidence appellant's counsel moved the court to instruct the jury to find the defendant not guilty, and presented to the court an instruction to be given to that effect. The motion should have been allowed.

We think it unnecessary to pass on other questions discussed by appellant's counsel. The judgment will be reversed.