## TEXAS STATE FAIR v. BRITTAIN.

(Circuit Court of Appeals, Fifth Circuit. December 2, 1902.)

No. 1,176.

1. NEGLIGENCE—CONCLUSION OF WITNESS—HARMLESS ERROR.

Where, in an action for injuries sustained by the falling of seats in a show on a state fair ground, a witness who had erected the seats testified that he had used first-class material in their construction, and that after he had erected them they were in first-class condition, defendant was not harmed by the rejection of a question asking the witness to state whether or not the seats were properly and carefully erected.

2. STATE FAIR ASSOCIATION—NEGLIGENCE OF LESSEE—PRIVILEGES.

Where a state fair association, under a contract giving the exclusive use of a portion of its ground to an exhibitor, advertised such exhibit as one of the attractions of the fair, it was liable for injuries to a spectator caused by the falling of seats negligently constructed by the exhibitor.

In Error to the Circuit Court of the United States for the Northern District of Texas.

D. E. Greer and Geo. H. Plowman, for plaintiff in error.

Wm. J. Moroney, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. This action was instituted on behalf of plaintiff, Edward H. Brittain, in the circuit court for the Northern district of Texas, against the Texas State Fair, to recover damages for injuries to himself. His allegations show substantially that the Texas State Fair is a corporation organized under the laws of Texas, with its principal place of business in Dallas; that said fair is the owner of 100 acres or more of land, which, being inclosed within a high board fence, is, together with the buildings and structures thereon, used by said corporation for carrying on the business of an annual fair or exposition, to which the public are, by advertisements in newspapers and otherwise, invited; that said Texas State Fair carried on and controlled separately, as a part of its business enterprise, a number of side-show attractions, all of which were within the said fence inclosure; that an admission fee was charged at the entrance of each of the several side shows; that, in accordance with such said newspaper and other advertisements, said fair was on October 3, 1900, carrying on at nighttime a side show called the "Burning of Chicago"; that said side show, though ostensibly under the direction of a firm known as Smith & Lucas, was in fact under the management and control of the Texas State Fair, the said side show being advertised as one of its attractions; that said Texas State Fair was largely interested in the expense and profits of said side show, and, if said Smith & Lucas had any connection or interest therein, such interest was not known to plaintiff or to the public; that plaintiff was led to believe and understand from said advertisements that said side show was a part of the attractions managed by the Texas State Fair, and to which it invited the public; that on October 3, 1900, plaintiff, having paid admission fee, entered said side show, and took a seat on the seats furnished by Texas State

Fair for its patrons; that said seats were very frail, and so weak and dangerously constructed that they were a menace to human life and limb, all of which was known to the Texas State Fair, or by the use of reasonable diligence would have been known by it, but which was not known to plaintiff, and could not have been known by the use of reasonable diligence; that while plaintiff was on said seats they fell to the ground, and he was thrown to the ground, thereby receiving bruises and injuries which have caused him, and will continue to cause him, great pain, suffering, and damage, great loss of time, and expense, said injuries being permanent in their nature; that such said injuries resulted in partial paralysis of his leg. and have greatly diminished his capacity to labor and attend to his business. He further alleged that the proximate cause of said damage to him was the gross negligence of the Texas State Fair, in not properly and safely constructing said seats, and by not exercising proper care and caution to erect and maintain a safe place for the public who were invited to witness said exhibition; that plaintiff is not guilty of any contributory negligence. Defendant, resisting this action, presented 17 exceptions or demurrers to plaintiff's petition, all of which the circuit court, as we think, properly overruled. In answering, the defendant corporation denied all the allegations, and, for special defense, alleged that it was not in any manner liable for the alleged injuries to plaintiff, because the Texas State Fair was not at the time mentioned in the possession of or control, or had any supervision or management of, the inclosure or premises in which was given the side show called the "Burning of Chicago"; that it was not in any manner responsible for the condition of said grounds, or the seats which were alleged to have fallen; that prior to the injuries of which plaintiff complains the defendant corporation had leased the same to Smith & Lucas, and they, then being in exclusive possession, direction, and control of said premises, were solely responsible for any person injured thereon. Defendant corporation further alleged that, at the time Smith & Lucas entered upon the premises leased to them, the same were in safe condition, free from defects of every character, and, if the premises became dangerous thereafter, the same was due exclusively to the acts of some person or persons other than defendant. The corporation contends further that, if plaintiff was injured as he claims, the seats, if they were faulty, were constructed by a person or persons other than the defendant, without its knowledge or consent; that defendant corporation, never having had knowledge of the condition complained of, is not responsible for plaintiff's injuries. On the issues stated substantially above, the trial resulted in a judgment for defendant in error.

The record shows that counsel for plaintiff in error sought a new trial, charging the trial court, in his motion therefor, with 24 separate erroneous rulings, besides the 17 errors made in overruling the same number of demurrers or exceptions to the petition of defendant in error. Those several assignments charging the trial court with erroneous rulings on the pleadings and during the trial proceedings are more or less emphasized again in the 25 assignments of error disclosed in the briefs of plaintiff in error. The formidable array of assignments of error found in the record has not forbidden a careful consideration

of them, together with the argument of the learned counsel in their behalf. It does not appear to us that reversible error is disclosed in any of the assignments. It may be that error urged in assignment No. 19 deserves special consideration. It is contended in that assignment that plaintiff in error should have had the benefit of Sessums' answer to the question, "State whether or not these seats were properly and carefully erected." The trial court forbade an answer to that question on objection of defendant in error, substantially on the ground that it was incompetent and irrelevant, and called for an opinion of the witness, who was not an expert. We think the objection, if it was limited to the grounds stated, was not well taken, and that there would be reversible error in its exclusion from the jury, but for the fact that the same witness had, before this question was asked him, answered other questions which brought out substantially the same facts which plaintiff in error was then endeavoring to have him state to the jury. Sessums, before this question was asked, had said, in response to questions presumably similar to the excluded question, that he erected the seats, and told of the sort of material that he, as the builder of the seats, had used in their construction. Then, answering further, he said "that after I erected the seats their condition was first-class," and were made of first-class material. The witness, as any other carpenter who worked on the construction of the seats, though he might not, under the court's test of his qualification as an expert, have been permitted to testify in such capacity, was competent to answer said question, and the question was not irrelevant. It appears that his answer to the objectionable question would have added to the force of his previous testimony as to the matter of the construction of the seats only in a cumulative way. The jury had already heard substantially the same testimony which Sessums was expected to give if he had been allowed to answer that question. His answer, at best, would have added emphasis to his testimony on substantially the same issues. Conceding that the objection, if limited to the grounds which met the approval of the trial court, should have been overruled, we think Sessums' answers to other questions substantially aided the purpose of the counsel for plaintiff in error as much as if Sessums had been permitted to answer most favorably to the excluded question. On this view, it follows that the error assigned does not, under the circumstances, have the effect of a reversible error.

It may be, as between the Texas State Fair and Smith & Lucas, the latter were authorized, on such terms as to them were satisfactory, to carry on and supervise the side show; but it seems clear that no contractual relations between such parties can be invoked to release the state fair, under the state of case shown in the record, from the duty of exercising reasonable care in the interests of the people who were attending that fair, or were witnessing such attractions in side shows as it offered to the public. When Brittain paid his admission fee and entered upon the seats in question, it was a matter of no importance to him who had erected the seats. Whether the representatives or managers of the fair, or Smith & Lucas, furnished the seats, he had a right to expect that he would be provided with reasonably safe seats. The case of Texas State Fair v. Marti was founded on the

same cause of action shown by the pleadings in this case. Marti's wife received personal injuries while attending a fireworks exhibition given ostensibly by the same Smith & Lucas on the grounds and in the place now in question here. The injuries therein complained of seem to have been inflicted at the same time and in the same way (by falling of the seats) as shown in the Brittain case. Substantially the same defenses as were set up in the trial of this case were discussed in the opinion of the court of civil appeals in Texas. The case is reported in volume 69 of the Southwestern Reporter, at page 432. The court, having in that case cited a rule stated in Cooley, Torts (2d Ed.) p. 718, says:

"No matter by whom the seats were erected, it was the duty of the plaintiff in error, Texas State Fair, to see that the same were in reasonably safe condition before inviting the public to occupy them."

We think the rule cited from Cooley fully vindicates what we quote above from the Texas court's opinion. This view of the Texas court is supported by a number of cases cited by the court. Among them are Railway Co. v. Moore's Adm'r (Va.) 27 S. E. 70, 37 L. R. A. 258; Conradt v. Clauve, 93 Ind. 478, 47 Am. Rep. 388; Sebeck v. Plattdeutsche Volkfest Verein (N. J. Err. & App.) 46 Atl. 631, 50 L. R. A. 199, 81 Am. St. Rep. 512, and others. In the New Jersey case cited it was held that:

"Whether invited upon the premises by contract of service, or by the calls of business, or by direct request, is immaterial. The party extending the invitation owes a duty to the party accepting it to see that at least ordinary care and prudence are exercised to protect him against dangers not within his knowledge, and not open to observation."

Conceding that the jury found correctly on the issuable material facts which show the legal relations of Smith & Lucas to the Texas State Fair, we think it follows, under the rule of law which we cite from the Louisiana and Texas cases, that the negligence which was the proximate cause of Brittain's injury is chargeable to the Texas State Fair, and that the judgment of the circuit court rightfully held the said corporation liable in damages.

The judgment of the circuit court is affirmed.