## Stella Rayfield, Defendant in Error, v. Sans Souci Park et al., Plaintiffs in Error.

### Gen. No. 14,367.

1. CONTRIBUTORY NEGLIGENCE—*when minors may be guilty of.*
Children between the age of 13 and 14 years are charged with
the duty of exercising ordinary care and if they fail to do so and
their negligence contributes to the injuries complained of, recover-
ies will be barred.

2. CONTRIBUTORY NEGLIGENCE—*when minor guilty of.* Held, that
the plaintiff in this case, a minor between the age of 13 and 14
years, was guilty of such contributory negligence as barred a re-
covery, it appearing that she was injured while using a "maze,"
located in a public amusement park, as a playground.

3. NEGLIGENCE—*when doctrine res ipsa loquitur does not apply.*
Held, that the doctrine of *res ipsa loquitur* did not apply in this
case in which a child, between the ages of 13 and 14 years, while in
an amusement park was injured by falling glass in what was called
a "maze."

4. NEGLIGENCE—*when owner not liable for acts of concessioner.*
The owner of an amusement park who rents concessions therein
is not liable for any acts of negligence by the concessioner where
it appears that such concessioner was in the exclusive possession
and control of the particular portion of the park in question.

Action in case for personal injuries. Error to the Municipal
Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.
Heard in this court at the August term, 1908. Reversed. Opinion
filed March 22, 1909.

WHEELER, SILBER & ISAACS, for plaintiffs in error;
FREDERICK D. SILBER, of counsel.

ALDEN, LATHAM & YOUNG, for defendant in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion
of the court.

This is a writ of error to reverse a judgment ren-
dered in a suit by Stella Rayfield, a minor, by her next
friend, against Sans Souci Park, a corporation, and the
Marshall Amusement Company, also a corporation.
The case is one of the fourth class, in which no for-

mal pleadings are required, but, in lieu of a declaration, the plaintiff, in case the suit is for a tort, is required by section 40 of the "Act in relation to a Municipal Court in the city of Chicago", to file "a brief statement of the nature of the tort, and such further information as will reasonably inform the defendant of the nature of the case he is called upon to defend". In this case the plaintiff filed an amended bill of particulars, or statement, which is as follows:

"Defendant, Sans Souci Park, maintained an Amusement Park to entertain the public in Chicago; charged an admission fee for each person and permitted certain concessions to be and remain upon the grounds to amuse the public; that it became the duty of said defendant, Marshall Amusement Company, the latter being a concession located within said Sans Souci Park, to exercise reasonable care to have the grounds, buildings, appurtenances, etc., of said concession in a reasonably safe condition, in order that the public and plaintiff lawfully within said concession of said Marshall Amusement Company should not be injured. That while plaintiff was using ordinary care, she was injured on account of the failure of the defendants to use ordinary care to keep certain glasses located in said concession, Marshall Amusement Company, in a proper and safe condition of repair. That said defendants also negligently and carelessly placed and allowed glass to be placed in said concession which was too thin for the purposes for which it was to be used. That the defendants also negligently failed to properly secure certain of the glasses used in said concession, and by reason of the negligence of the said defendants one of the glasses broke and fell out of its frame when slightly touched by the plaintiff, and fell upon her, whereby she was injured", etc.

The cause was tried by the court and a jury; the defendants at the close of the evidence moved the court to instruct the jury to find the defendants not guilty,

which motion the court denied and submitted the cause to the jury, instructing them orally. The jury found for the plaintiff and assessed her damages at the sum of $1,000, from which plaintiff, on the hearing of a motion for a new trial by the defendants, remitted $400, and the court overruled the motion for a new trial and rendered judgment for $600. The defendant, Sans Souci Park, maintained an amusement park in the city of Chicago, and charged an entrance fee into the park of ten cents. It granted a concession in said park to the defendant, the Marshall Amusement Co., by a sublease in writing, for which the latter company paid the Sans Souci Park a certain percentage. This was testified to by Mr. Marshall, the president of the Amusement Company, who was called as a witness by the plaintiff. What the percentage was estimated on does not appear from the evidence, but presumably, on the receipts of the Marshall Amusement Co., which company charged five cents for entrance into its concession. The amusement company maintained on its concession an arcade or maze. It appears from the evidence that in the maze there are 225 frames, in 54 of which there were mirrors, in 12 plate glass, and the remainder of them were open, for people to pass through. Mr. Brown, plaintiff's witness, testified that he had measured one of the frames and found it to be seven feet high, inside measurement, from the floor to the top where the glass would be. The mirror and glass were on the sides of the walks. These frames were arranged in a triangular shape, some having mirrors in them and some plain glass. Mr. Marshall testified: "In working through the maze, you work on one side, and then work on another side, then off in another direction. In some places both sides are visible to the people who go through the maze. You can't see any one, except in certain positions".

Mr. Brown testified: "This is my description of the arcade. You step in there, step into a square. That square would have one side opening and might

have two exits and you would step from the first square into another square and from that square into another one, one side being open each time; you stepped into another square and finally out to the top of the arcade. These squares, as I remember them, were about two feet wide. Might have been a little more, and two feet long; they had glass in them in one place and in another place they did not have glass. In a third place there would be a mirror. In some places you can look clear through to the outer edge and you would not know. You might see yourself in the mirror in any place. That is the best explanation I can give you".

Adelaide Kerwin, called by the plaintiff, testified that the passage ways in the maze are two and one-half feet wide. There is this notation in the record of her testimony: "Witness indicates two and one-half to three feet". In witness' cross-examination she testified: "I noticed that the space was about three feet wide".

In the evening of May 25, 1903, the plaintiff, in company with her father and mother and Mr. Kerwin and his daughter Adelaide, went to the Sans Souci Park, and entered the park, Mr. Rayfield paying their entrance fees, ten cents for each of them. They visited various places of amusement, or shows, in the park, and, about nine o'clock, the plaintiff and Adelaide Kerwin came to Mr. Kerwin, who was then where the band was playing, and plaintiff asked him for some money, so she and her friend could visit some other places of amusement, and he gave her money. She and Adelaide Kerwin then went to the arcade, or maze, paid their entrance fee, five cents each, and entered. Adelaide testified, that when they first went in they felt their way around several times, because they did not want to bump into the glass; that they felt their way around till they thought they knew it, and then they said they would hide from each other, and they got away from each other; and Stella saw

her, and went right forward into the plain glass and broke it and a piece of it fell down and cut her.  In the cross-examination of the witness, she says: "She saw me through the plain glass, and then she walked and put her hands through the glass, while trying to get away, so that I could not see her".

The plaintiff, after testifying that she and her cousin, Adelaide, paid five cents each and entered the maze, was questioned and answered thus:

"Q.  Tell what else you did?

A.  We walked in and felt our way around, and then after we had been in there a few minutes, we wanted to get separated from each other, and I started one way, and Adelaide was behind me, and I turned around and saw her and went to go forward and ran through the glass, and a piece fell down and cut me".

On her cross-examination this occurred:

"Q.  Well, now, when you struck the glass, did you turn around quick?

A.  I turned around first, and didn't see the glass, and run right through it".

In the examination of Mr. Brown, he testified that he thought he once heard the plaintiff say that she was playing "ditch" with her cousin and ran up against the glass; but did not remember the time of hearing it.

Mary B. Hale, called by defendants, testified that she was cashier for the Marshall Amusement Co., and was acting as such the evening in question, and saw plaintiff and her cousin then; that plaintiff was brought to her at the office, and she talked with her, and plaintiff told her that they were playing tag or ditch, and said that there was no one to blame but herself; that they were running and ran into the mirror.  Witness further testified that, subsequently, the same evening, Mr. Brown and Mr. Rayfield, plaintiff's father, came to her and inquired how it happened, both of the little girls being present, the plaintiff with her head bandaged, and witness told them what

the plaintiff had said, and that plaintiff spoke up and said, "We were playing ditch and run into the mirror". In the evidence of the plaintiff and Adelaide, they sometimes call the play in which they were engaged ditch and sometimes tag.

Joseph F. Schumacher, called by defendants, testified that on the day of the accident, when the girls came out to the ticket office, he talked to Adelaide and she said: "We were playing tag, and this little girl ran into the mirror while I was chasing her".

There is no contradiction of the testimony of the two witnesses last named, although plaintiff and Adelaide testified in rebuttal and Mr. Rayfield and Mr. Brown were both called as witnesses on the trial.

The plaintiff was between thirteen and fourteen years of age at the time of the accident. Minors much younger are charged with the duty of exercising ordinary care. C. & G. T. R'y Co. v. Hoffman, 82 Ill. App. 453, and cases cited, 464, 466.

Reasonable minds can reach only one conclusion from the evidence, namely, that the plaintiff did not exercise ordinary care, but, on the contrary, was guilty of negligence which caused the accident.

The evidence fails to prove that the defendants were, or that either of them was, guilty of negligence. On the contrary, we think it shown, by the greater weight of the evidence, that the maze was constructed in a safe manner and was so maintained.

Counsel for plaintiff, apparently impressed with this view, invoke the doctrine *res ipsa loquitur,* and devote the greater part of their argument to the discussion of it, citing numerous cases.

Counsel quote the following from C. C. Ry. C. v. Barker, 209 Ill. 321, 326: "There must be reasonable evidence of negligence. But when the thing is shown to be under the management of the defendant, or his servants, and the accident is such, as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable

evidence, in the absence of explanation by the defendant, that the accident arose from want of care".

In the present case there is no reasonable evidence of negligence of the defendants, and the case differs materially from the case cited, in that it did not appear that the plaintiff had been at all negligent, whereas in this case it appears from the evidence that the plaintiff was guilty of negligence which not only accounts for the accident, but was the immediate cause of it. This case also differs from the case cited, in that plaintiff was using the maze in an unusual and extraordinary way, viz: as a playground. The maze was intended as and was a puzzle, by reason of the arrangement of its frames, mirrors, glass, openings and devious ways, the puzzle being how to go through it. As such it was safe. It was not intended for a playground in which to play "tag", "ditch", or hide and seek, and the evidence of plaintiff and her cousin and companion, Adelaide, shows they knew that if they were not careful there was danger of their running against a glass or mirror and breaking it, as the plaintiff did. The Marshall Amusement Co. constructed the maze and was in exclusive possession and control of it and its site, and the Sans Souci Park could not incur liability by reason of the fact, proved by the plaintiff, that it made a lease to the Marshall Amusement Co. of the ground on which the maze was. Gridley v. City of Bloomington, 68 Ill. 47, 51; City of Peoria v. Adams, 72 Ill. App. 662, 671.

It would be rather a harsh rule that if A leases a parcel of ground to B and B takes possession and erects a structure thereon, of which he has exclusive possession and control, and by reason of unsafe construction, or the structure not being kept in proper repair, C is injured, that A may be held liable. There is no such rule. The court erred in not taking the case from the jury, and the judgment will be reversed.

*Reversed.*