110 · APPELLATE COURTS OF ILLINOIS.

Stickel v. Riverview· Sharpshooters Park Co., 159 Ill. App. 110.

## Nettie Stickel, Appellee, v. Riverview Sharpshooters Park Company, Appellant.

### Gen. No. 15,101.

1. NEGLIGENCE—*liability of proprietor for acts of concessioner.* The proprietor of an amusement park is liable for injuries to its patrons arising from damages in structures or apparatus employed by its concessioners where the proprietor receives a portion of the sums paid for admissions to such structures or apparatus and retains and exercises a general charge of the grounds in which such structures and apparatus are contained.

2. CONTRIBUTORY NEGLIGENCE—*what not as a matter of law.* Held, that it was not contributory negligence as a matter of law for a person going upon or placed upon a chute at an amusement park to fail to take hold of the railings upon the sides thereof.

3. INSTRUCTIONS—*must not ignore issues.* An instruction which directs a verdict for the defendant should not ignore any theory of recovery justified by the pleadings and the evidence.

4. VERDICTS—*when not excessive.* Held, that a verdict in an action on the case for personal injuries for $3,500 was not excessive where the evidence showed that the plaintiff was in the business of keeping boarders, that she did the hard work connected with that business, that since the injury she has been unable to do the work which she was formerly accustomed to do, that she is lame and crippled, has suffered pain and is permanently injured.

Action in case for personal injuries Appeal from the Superior Court of Cook county; the Hon WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed December 2, 1910. Rehearing denied December 13, 1910.

**Statement by the Court.** The defendant below, Riverview Sharpshooters Park Company, appellant, maintained and operated Riverview Park, a public amusement park, which contained within its enclosure various kinds of amusements and attractions. It charged and collected at the gates of the park a general admission fee of ten cents for each person. Certain exhibitions and attractions were maintained and operated within the park by owners of concessions from the defendant. Additional charges were made and col-

lected for admissions to these exhibitions and attractions by the various concessioners. One of these amusement attractions was known as Katzenjammer Castle, which was run and operated by Paul W. Cooper and William Schmidt, concessioners. To enter this establishment, an additional admission fee of ten cents a person was charged by the concessioners, twenty-five per centum of which was paid by the concessioners to the defendant.

June 17, 1906, the plaintiff with her escort visited Riverview Park. They purchased admission tickets at the main entrance and passed into the grounds. After walking about the grounds for some time, they came to the building known as Katzenjammer Castle and purchased tickets of admission to the Castle, paying ten cents for each ticket. They ascended the moving stairway in the building and were conveyed to the upper floor of the building, which had dark and narrow passages, moving, springing and suspended floors, dark rooms with images of goblins, heads of ferocious beasts with lighted eyes, many kinds of weird and fantastic figures, all so arranged in connection with the noises made, as to produce an effect upon the nerves of the visitors. Having passed through this section of the floor they came to the exit, claimed by the plaintiff to be the only exit from this part of the Castle. This consisted of a chute or slide. Here, objection being made by the plaintiff and her escort to using the chute or slide, they were told by an attendant that they would have to go out that way as there was no other, and that they would have to hurry out as they were blocking the passage of other people. The plaintiff testifies that the attendant took hold of her, placed her on the chute in a sitting position and started her down the chute, and she went down with considerable velocity to the bottom, breaking her leg as she struck the bottom.

The chute extended from the outside of the upper

story of the building to from eighteen inches to two and one-half feet from the ground, and was at an angle or pitch of thirty-five or forty degrees.

At the close of plaintiff's evidence and again at the close of all the evidence in the case, the defendant moved the court to exclude the evidence and instruct the jury to find the defendant not guilty.

These motions were each denied and the instructions were refused. The jury returned a verdict against the defendant, assessing the plaintiff's damages at $3,500. The court denied a motion for a new trial, and a motion in arrest of judgment, and entered a judgment on the verdict.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; RALPH M. SHAW and EDWARD W. EVERETT, of counsel.

JOHN T. MURRAY and JAMES MAHER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The evidence tends to show that the employes of the concessioners were not under the immediate and direct control of the defendant. True it is that Paul W. Cooper, one of the concessioners of the Katzenjammer Castle, was president of the defendant, he nevertheless had nothing to do with the employes of that enterprise as president of the defendant, except to see that they were orderly. He had nothing to do with hiring or discharging them as president of the defendant. The question of liability is therefore presented whether the defendant as proprietor of Riverview Park is liable for injuries to its patrons through defect in structures or apparatus employed by its concessioners Cooper and Schmidt for the amusement of patrons of the park, where it receives a portion of the sums paid for admissions to such structures or apparatus and retains and exercises a general charge of the grounds in which such structures and

apparatus are contained. We think the liability of the defendant for injury caused by the negligence of its concessioners, under the circumstances shown in the record, is supported by the weight of authority.

The case of Hollis v. Kansas City Mo. Retail Merchants Ass'n., 205 Mo. 508, is so closely analogous in its facts to the case here made that the cases cannot be discriminated or distinguished on the material facts or the principles of law applicable thereto. In that case the plaintiff was injured by the breaking of an axle of a gondola car running at great speed, operated by a concessioner of the defendant in an exposition conducted and operated by the defendant, which received a certain portion of the admission fees charged for admission to the gondola cars by the concessioners. The defendant had not constructed or equipped the so-called merry-go-round amusement, nor did it have any voice or control in the management or operation of the amusements furnished by the concessioner including the gondolas. The trial court, at the close of the plaintiff's evidence at the request of the defendant instructed the jury that the plaintiff was not entitled to recover and a judgment was entered for the defendants. The Supreme Court reviewing the record and judgment on appeal said: "If the instruction in the nature of a demurrer was given in this case upon the theory that the defendants were engaged in a separate and distinct business, and that the fact that the show and amusements and the appliances connected therewith were provided and conducted by a corporation or persons independent of the merchants' association, and that the association was not the owner of the appliances upon which the accident occurred, then we say that, under the evidence, which clearly indicates that the merchants' association were interested in the exhibitions and amusements furnished, had general charge of all the grounds, participated in the proceeds from the appliances upon which this accident occurred, and took an active part

in the distribution of posters advertising the amusements, which at least must be construed as an implied invitation to the plaintiff and others to visit the ground under the control of the retail merchants' association, this instruction should not have been given.''

The court refers to Fletcher v. Boston & M. R. Co., 1 Allen, 9, and Shearman & Redfield on Negligence, 501, 504, and Nagel v. Missouri R. R. Co., 75 Mo. 653, 660 where the rule is laid down that ownership in such cases is not the test of responsibility, and that if enough appears to show that the party sought to be made liable have the property in his charge or under his control on which the nuisance complained of existed, it is sufficient.

The court then quoted at length from the decision in Thompson v. Lowell, L. & H. Street R. Co., 170 Mass. 577, and from other authorities, and concludes that under the authorities there was a sufficient showing of negligence in the construction, operation and management of the appliances to have authorized a submission of the cause to the jury, and reversed the judgment and remanded the cause accordingly.

In Thornton v. Maine State Agri. Soc., 97 Me. 108, the court had in judgment before it the liability of an agricultural society for the death of a patron which occurred while the latter was standing upon a railroad platform outside of the grounds. The death was caused by careless shooting by a patron of a shooting gallery maintained and controlled by a concessioner upon the society's grounds. The court held that it was the duty of the society to use reasonable care in making the allotments of space for exhibits, shows, and other features and in their subsequent inspection and supervision to see that the safety of its patrons was not endangered; that as between the society and the invited public the duty remained upon the former. of using reasonable care to see that all of the exhibition grounds were safe; and that this duty would

be particularly urgent in case of an exhibition or sport which might be attended with danger, unless properly conducted. This rule of law finds further support in Texas State Fair v. Brittain, 56 C. C. A. 499, 118 Fed. 713; Texas State Fair v. Marti, 30 Tex. Civ. App. 132; Richmond & M. R. Co. v. Moore, 94 Va. 493; Roper v. Ulster Co. Agri. Society, 120 N. Y. Supp. 644; and Barrett v. Lake Ontario Beach Improvement Co., 174 N. Y. 310.

It is not seriously controverted by counsel for defendant that the defendant as owner of the park is liable to persons injured while visiting the amusements therein for the negligent construction or dangerous arrangement of the structures within the park. The contention is that under the law the defendant is not liable for an injury caused to a visitor by the negligence of an independent concessioner when the injury results from negligent operation by the employes of a concessioner and not from negligent construction or dangerous arrangement of any of the structures. We think, however, that under the pleadings and the evidence it was a question for the jury in the first instance, whether or not the construction and the arrangement of the structure in question was negligent, and dangerous to. persons visiting the amusement conducted therein. The amended declaration sufficiently presents this issue. From the evidence it appears without serious controversy that the plaintiff paid for entrance tickets admitting her to the park and to the Katzenjammer Castle, and that she had never been in the Castle before and was not aware of what it contained, or how it was laid out and arranged, nor did she know of the means of egress therefrom. When she and her escort, Starkey, arrived at the exit and found the exit to be by means of a steep and precipitous slide or chute, they strongly objected to that means of exit, and asked the employes in charge for another way out, and according to the testimony of herself and Starkey, they were informed that there

was no other way out of the Castle, and that they must keep moving and go out in the same manner as other people were going—that it was impossible for them to turn back and go out by the way they came in. This seemed probable because of the place being filled with people going the same way that they had been going. Whether under these circumstances the plaintiff was pushed down upon the chute as she and Starkey testify or not we do not regard as essential. She stepped upon the chute or was put upon it with the result that she suffered the injury.

It was a question for the jury whether a chute constructed as this was with its lower end terminating from a foot and a half to three or four feet above the ground was negligently and dangerously constructed. We cannot say that the finding of the jury was manifestly wrong upon this issue.

Defendant contends that the plaintiff assumed the risks from injuries received from the use of the slide; and that her injury was caused by her own act in jerking away from the attendant at the bottom of the chute. These questions were also for the jury in the first instance, and we find no reason in the evidence for saying that the conclusions of the jury were wrong.

In our opinion the trial court did not err in refusing to give instructions to the effect that the plaintiff could not recover under the first and second counts of her declaration. We think the instruction requested by defendant to the effect that if the jury found from the evidence that the defendant furnished a safe means of egress from the place the plaintiff was in immediately before using the slide, and that the plaintiff knew of the safe means of egress or by the exercise of ordinary care and diligence could have known of the safe means of egress, and that plaintiff chose a more dangerous means of egress, she could not recover and that the jury must find the defendant not guilty, was

properly refused for the reason that there was no evidence upon which to base it. There is no evidence that the plaintiff knew or could have known, within the time she was given at the top of the chute, of the place constructed of wood and about two feet wide, testified to by the witness D'Algores, which she could have used to descend to the ground. It was not pointed out to her by the attendant.

The instruction requested by the defendant relating to the duty of the defendant as landlord of Cooper & Schmidt was properly refused in our opinion for the reason that it submitted a non-essential issue or question and did not correctly state the law, and was misleading.

We do not think that the plaintiff could be held guilty of contributory negligence which precludes a recovery, as a matter of law, because she did not take hold of the railing on the sides of the chute (I. C. R. R. Co. v. Keegan, 112 Ill. App. 28) and the court did not err in refusing the instruction that if she did not use the railing for the purpose of regulating her speed, and that by so doing she could have avoided the injury the jury should find the defendant not guilty.

The defendant requested the following instruction which the court refused:

"You are further instructed that if you find from the evidence that the attendant in charge at the top of the slide pushed or shoved the plaintiff at the time she was about to use the slide, you are instructed that the mere fact that the attendant pushed or shoved the plaintiff would not be an act of negligence on his part. The plaintiff must show by a preponderance of the evidence that the attendant pushed or shoved the plaintiff and thereby accelerated her speed to such an extent that the plaintiff, by the exercise of ordinary and reasonable care on her own behalf, was unable to avoid the accident complained of. If you find that the plaintiff has failed to show by a preponderance of the evidence that the attendant pushed or shoved the plaintiff, and that in doing so he accele-

rated her speed so that she was unable, by the exercise of ordinary and reasonable care for her own safety, to prevent the injury complained of, then the plaintiff cannot recover and you must find the defendant not guilty.''

The court did not err in refusing the instruction, because it directed a verdict and ignored entirely the question of the negligent and dangerous construction of the slide or chute, and limits the right of recovery to the negligent act of the attendant at the top of the chute.

It is claimed that the verdict is excessive. The evidence shows that the plaintiff was in the business of keeping boarders and that she did the hard work connected with that business. Since the injury she has been unable to do the work which she formerly was accustomed to do. She is lame and crippled since the injury. She has suffered great pain; and the inference from the evidence that she was permanently injured, or at least permanently disabled from conducting her business as she formerly did and that she has been and will continue to be deprived to a great extent of the ability to earn her livelihood, is warranted. We see no evidence that the jury were swayed by passion or prejudice in assessing the damages. While the amount of the verdict may be considered liberal we cannot say it is excessive and should be reduced. Finding no material error in the record, the judgment is affirmed.

*Affirmed.*