356    APPELLATE COURTS OF ILLINOIS.

Babicz v. Riverview Sharpshooters Park Co., 161 Ill. App. 356.

**Katherine Babicz, Appellee, v. Riverview Sharpshooters Park Company, Appellant.**

**Gen. No. 15,466.**

1. NEGLIGENCE—*when owner of amusement park liable for acts of concessionaire.* If a patron of an amusement park is injured as the result of a negligent construction or maintenance of a portion of such park conducted and in the possession of a concessionaire, the owner of the park is not exempted from liability unless it appear that the possession and control of the concessionaire is exclusive.

2. AMENDMENTS AND JEOFAILS—*when allowance of amendment will not reverse.* Unless it appear that the court abused its discretion, its action in allowing an amendment will not justify a reversal.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed on *remittitur.* Opinion filed April 18, 1911.

**Statement by the Court.** Suit was brought by the appellee, hereinafter called the plaintiff, against the appellant, hereinafter called the defendant. J. E. Miller and Arthur B. McCoid were joined as defendants also. As to Miller and McCoid suit was dismissed during the trial.

The Park Company was charged, in connection with Miller and McCoid, with having negligently furnished and provided a seat, to wit: a bench for the plaintiff "which was weak, insecurely fastened and defective." By amendment after verdict, the words, "and a certain ascending tier or series of seats with supports thereunder" were inserted after the word "bench" in the declaration.

Plaintiff was a single woman, 24 years of age, employed as a pocket maker in a clothing factory at $10 to $12 a week. In June, 1907, she and her married sister went to Riverview Park about six o'clock in the

Babicz v. Riverview Sharpshooters Park Co., 161 Ill. App. 356.

evening, where they paid ten cents entrance fee for general admission to the grounds. The park is devoted to the furnishing of amusements, and included within its gates are what are known as "concessions," being places entrance to which is gained by the payment of an additional fee. Among these was one known as the "Florida Zoo." This concession occupied a space of about 8 by 50 feet upon the premises of the defendant, and also additional ground adjacent thereto, but which was leased from the owner of the adjoining property. The seats were upon the ground so leased from the adjoining owner. The plaintiff paid admission fee to this concession and occupied a seat in what was called "the grand stand." This suddenly swayed over to one side, and the plaintiff fell to the ground with the bench upon which she was seated. In falling she sustained a Potts fracture of the left leg above the ankle.

At the time of the trial, fifteen months after the accident, the evidence tended to show that the plaintiff had made what the doctor called "a good recovery." There was some enlargement of the injured ankle when measured and compared with the other, and the plaintiff claimed she could not walk far without pain and that she had some irregularity in menstruation.

By the verdict of the jury the plaintiff was awarded $6,000 damages, which, after the hearing of a motion for a new trial, was reduced by a *remittitur* to $4,000 and judgment rendered thereon.

JOSEPH H. FITCH, for appellant; JONES EDGAR BROWN, of counsel.

N. L. PIOTROWSKI, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

We are asked to reverse this case because, as the

defendant contends, the Florida Zoo Company erected the seats which fell, and was in exclusive possession and control of them and the site thereof, under leases giving them such possession and control; second, because there was a variance as was claimed, between the declaration and the proof, and the court should have instructed a verdict for the defendant; third, because the amount of the judgment is excessive.

Appellant in its brief and argument relies chiefly upon the case of Rayfield v. Sans Souci Park, 147 Ill. App. 493. In that case Mr. Justice Adams, who wrote the opinion, after holding that the case must be reversed on other ground, stated:

"The Marshall Amusement Company constructed the maze and was in exclusive possession and control of it and its site; and the Sans Souci Park could not incur liability by reason of the fact, proved by the plaintiff, that it made a lease to the Marshall Amusement Company of the ground on which the maze was."

The contracts offered in evidence in the case before us show that the concessionaire leased part of the property from the defendant, and part from the owner of the adjoining land, paying to each of them a percentage of the receipts. The owner of the adjoining land, however, had no control over the property, while in the contract between the defendant and the concessionaire the defendant promised to secure from the adjacent owner for the concessionaire sufficient ground on which to locate three concessions. The concessionaire agreed to install and maintain for the season the concessions, without cost to the defendant; to pay the reasonable salaries of all needed cashiers, to be selected by the defendant; to pay for electricity, light and power, to be furnished by the defendant; to light the premises to the satisfaction of the defendant; to pay for tickets to be selected by the defendant, and in case of accident or casualty to save the defendant harmless from any and all cost and expenses incident thereto or arising therefrom. All these things were

to be done "in consideration of the grant of said privilege." The concessionaire further agreed to be governed by eighteen different rules prescribed by the defendant, which were set forth in the contract.

It will be observed that a patron of the concession could not obtain access thereto without first paying his admission fee for general admission to the park. We think, therefore, that under all these circumstances and conditions, the concessionaire cannot be said to have been in exclusive possession and control of its exhibition and the site upon which same was located, and that in this respect the case is very different from that of Rayfield v. Sans Souci Park, above referred to.

In the case of Stickle v. Riverview Sharpshooters Park Company, 159 Ill. App. 110, this court sustained a recovery in a very similar case, and we regard the principles laid down in that opinion as controlling in the present appeal.

The next point insisted upon by the appellant is that there was a variance between the allegations in the declaration and the proof, and that this was not cured by the amendment after verdict.

We think that the court did not abuse the discretion vested in it in allowing the amendment, and we feel that the judgment rendered should not on that account be reversed.

Lastly, we come to the claim of the appellant that the verdict was excessive. Careful reading of the record has convinced us that there is merit in this claim. The verdict of the jury, as will be noted, was for $6,000, and the trial court required a *remittitur* of $2,000 and entered a judgment of $4,000. There is great force in the contention of the appellant that because of the excessive verdict and, as we believe, the excessive amount of the judgment, the case should be reversed.

We however think that justice will have been done if a *remittitur* of $1,000 is entered in this court. Judg-

ment will therefore be affirmed upon the filing by the appellee in this court within ten days a *remittitur* in that amount. The costs will be taxed to the appellee.

*Affirmed upon remittitur.*

*Remittitur* filed April 27, 1911.