LENORA HOLLIS, Appellant, v. KANSAS CITY, MISSOURI, RETAIL MERCHANTS' ASSOCIATION et al.

Division Two, July 1, 1907.

1. **NEGLIGENCE: Merchants' Association: Amusement Exhibitions: Distinct Business: Demurrer.** Where the evidence clearly indicates that the Retail Merchants' Association (a corporation) was interested in the exhibitions furnished by another defendant, had general charge of all the grounds where such exhibitions were given, participated in the proceeds from the appliance which broke down and upon which plaintiff was negligently injured, took an active part in the distribution of posters advertising the amusements, which must at least be construed as an implied invitation to plaintiff and others to visit the grounds where the exhibitions were given, an instruction in the nature of a demurrer cannot be given on the theory that defendants were engaged in separate and distinct businesses and that the amusements and appliances connected therewith were provided and conducted by the defendant amusement company independent of the merchants' association which was not the owner of the appliance which broke down and caused the accident.

2. ————: **In Control of Premises: Invitation.** One who is in control of premises is liable to another who upon his invitation enters thereon, and who, without fault on his part, is injured because of the unsafe condition of said premises or the negligent use thereof, if said unsafe condition is known or by the exercise of ordinary care would have been known.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

REVERSED AND REMANDED.

*Fyke & Snyder* for appellant.

(1) The court erred in instructing the jury at the close of plaintiff's evidence, to find for defendants. Upon what theory the court gave that instruction we do not know. The evidence clearly shows that defendants were in charge of the grounds; that they participated in the proceeds and profits arising from the gondolas; there is some evidence, at least, that plaintiff was injured by reason of the negligent management of the gondola, and its defective condition. It is wholly immaterial who owned the gondolas. Nagle v. Railroad, 75 Mo. 653. The defendant Retail Merchants' Association had general charge of all the grounds; it participated in the proceeds of the gondolas; and for any injury arising to visitors, from the negligent management of the gondolas, both it and the Bostock-Ferari Midway Carnival Co. were liable. Causadt v. Clauve, 93 Ind. 476; Railroad v. Moore, 37 L. R. A. 258; Thompson v. Railroad, 170 Mass. 577 (40 L. R. A. 345). Defendants were engaged in a common or joint enterprise. The Retail Merchants' Association furnished the grounds. The Bostock-Ferari Company furnished the monkeys, the lions, the gondolas, and the two divided the proceeds. (2) There was evidence of negligence in the management of the gondolas, and also evidence that it was in a defective condition. It was caused suddenly to run much faster than usual; the axle was defective. As a result the car upon which plaintiff was riding broke down and she was injured and horribly disfigured. Railroad v. Cotton, 140 Ill. 486; 1 Addison on Torts, sec. 33.

FOX, P. J.—This cause is here by appeal from a judgment for the defendant. The cause of action is thus stated by plaintiff in her petition, which is as follows:

"Plaintiff for her cause of action alleges that the Kansas City Missouri Retail Merchants' Association is a corporation duly incorporated according to law. That the defendant Bostock-Ferari Carnival Company is a corporation duly incorporated according to the laws of the State of Delaware, and at the time of bringing this suit maintained an office in the county of Jackson and State of Missouri. That Frank C. Bostock and Francis Ferari are partners doing business under the name and style of Bostock-Ferari Carnival Company, and at the time of bringing this suit maintained an office in Jackson county, in the State of Missouri.

"That on the seventh day of October, 1902, the said defendants were conducting in Kansas City, at or near Fifteenth street and the Paseo, an enterprise or exposition known as Kansas City's Fall Festival Exposition. That for the purpose of inducing people to attend said exposition and to pay admittance fee thereto, said defendants set up and operated at said place, among other things, what is known as gondolas, which said gondola was so constructed that it had a circular track upon which cars revolved, in which cars passengers or customers were invited for the consideration of ten cents, to be paid by such passengers, to take seats and be carried on and around said track in said cars. That a great many people on said seventh day of October, 1902, patronized said gondolas and were carried thereon and therein around said track in and upon said cars.

"That plaintiff, on said date, being invited thereto by defendants, took a seat in one of said cars for the purpose of riding thereon, and paid to defendants the usual and customary charge therefor, to-wit, the

sum of ten cents. That it was the duty of defendants to see that said apparatus was safe in every respect, to run said cars at a rate of speed that would not be dangerous to the public, and to use diligence to prevent same from giving way or breaking, and to see that passengers thereon were not endangered by any defect therein, or mismanagement by the agents and servants in charge of said apparatus and the machinery used in running the same. That said apparatus was dangerous and unsafe in this, that the front axle of said car in which plaintiff was riding was broken and cracked half in twain, which rendered same weak, dangerous and unsafe, which fact was well known to defendants, or by the exercise of ordinary care might have been known by them. That plaintiff, while so being carried around upon said track, and in said car, at a great and unusual speed, was, by reason of the negligence of defendant in running said car at said unusual rate of speed, and, by reason of the dangerous and unsafe condition of said axle, as aforesaid, and by reason of the negligence of the defendants in not inspecting said apparatus to see that the same was in good condition; and by reason of the negligence of defendants in running said car as aforesaid, said apparatus broke down and gave way and plaintiff was violently and with great force thrown against an upright post, which was a part of said gondolas, and struck said post with great force with her head and face, whereby she was greatly wounded and disfigured in this: That the skin in the front and side of her face was torn loose, her nose was split open and horribly lacerated. That on account of said injuries she has suffered great physical pain and mental anguish and has been permanently injured and disfigured and will be for the balance of her natural life permanently injured and disfigured as aforesaid, to her damage in the sum of twenty thousand dollars.

"Wherefore by reason of the premises plaintiff

prays judgment against defendants and each of them in the sum of twenty thousand dollars together with costs.''

To this petition separate answers were filed, one by the carnival company, which was a general denial. The answer of the Retail Merchants' Association consisted of a general denial and a plea of contributory negligence.

An examination of the abstract of the record, which discloses all of the evidence introduced in this cause, substantially verifies the statement of the facts in proof as made by the appellant, and the respondent seems to have given this cause no attention, and the statement as made by the appellant is before us unchallenged in any particular, therefore we shall adopt substantially the statement as here presented by the appellant. The facts as developed upon the trial of this cause were substantially as follows: The Kansas City Retail Merchants' Association is a corporation, and in the fall of 1902 was engaged in the enterprise of giving what was called a street fair at Fifteenth street and Paseo in Kansas City, Missouri. This street fair was composed of various exhibits furnished by such exhibitors as desired to exhibit their goods, wares and merchandise and also an exhibit of live stock. The enterprise was for profit. In addition to the exhibits as aforesaid, portion of the ground was set apart and upon which were located various amusements for the entertainment of visitors to the fair, consisting of German Village, Trained Wild Animal Show and other attractions, and also the Venetian gondolas, something similar to a merry-go-round. The general entrance was at Fifteenth street, at the northwest corner of the grounds. The grounds were enclosed on all sides so that admission thereto could only be gained by entering at the general entrance gate and for such admission a fee of ten cents was charged by the Fair

Association, all of which went to the defendant, Retail
Merchants' Association.   Clear across the east side of
the grounds a space was fenced off, in which, among
other attractions, was located the Venetian gondolas.
There was also a gate or entrance to that tract of ground
which was known as the Midway, at which was likewise
charged a fee of ten cents for admission.   Visitors who
paid this fee could walk around in that space of ground
and see whatever was not enclosed by tents, etc.   If
such visitors desired a closer inspection of such amuse-
ments an additional fee was charged for entrance
thereto, and if visitors desired to ride on the gondolas
a fee of ten cents was charged for that privilege.   The
testimony fairly shows, or at least it is susceptible of
a legitimate inference, that the defendant Bostock-Fer-
ari Midway Carnival Company entered into a contract
of some sort with the defendant Retail Merchants'
Association, whereby said Bostock-Ferari Company
was permitted to place in said grounds so set off, cer-
tain amusements, including the gondolas, and that said
Bostock-Ferari Company collected the admission fee of
ten cents for entering the Midway, which admission
fee was divided between the Bostock-Ferari Company
and the Retail Merchants' Association.   The testimony
tends to show that the fees charged for riding on the
gondolas was likewise divided between the Retail Mer-
chants' Association and the Bostock-Ferari Company.
Plaintiff sought to introduce a written contract which
it was admitted was signed by the Retail Merchants'
Association and the Bostock-Ferari Company.   This
contract was excluded by the court upon the ground
that it was claimed by defendants that the same had
been modified.   Plaintiff introduced in evidence a large
poster as follows:

"Kansas   City   Retail   Merchants'   Association,
Street Exposition.   County fair, from September 29 to

205 Sup—33

October 11, inclusive. A fortnight of Festivities. Fifty superior paid and fifty free attractions furnished by the World's Famous Bostock-Ferari Carnival Company. Watch future announcements.''.

It was testified by one of the witnesses, a member of the Retail Merchants' Association, that this poster was printed and circulated by the joint authority and consent of said association and the Bostock-Ferari Company. In addition to the above, plaintiff introduced in evidence another circular, which is as follows:

''Kansas City's Fall Festival Exposition, September 29 to October 11, 1902. Roosevelt day, in honor of President Roosevelt. President Roosevelt will visit the Kansas City Fall Festival Exposition, Monday afternoon, September 29, 1902. The largest fair ever held in the West. Twenty acres of enclosed space. Agricultural and Live Stock shows, Manufactures' exhibits of home products. Bostick-Ferari Mighty Midway Carnival Company. Five thousand dollars in cash and $5,000 of merchandise premiums for exhibitors of cattle, horses, sheep, mules, hogs, poultry, fancy pets, agricultural and horticultural products and fruit. A woman's department and art gallery, amusement for the children. Bostock-Ferari Mighty Midway Carnival Company. Eighteen big shows in this company alone. Trained wild animals, lions, monkeys, dogs, goats. Daily balloon ascension and parachute leaps. The Famous Watson Sisters in their electric act on the revolving trapeze. Free Amusements daily on the Exposition grounds. Separate day for Kansas, Arkansas, Nebraska and Missouri. One fare for round trip on all roads. Ask your local agent about it. Geo. A. Bond, President, and Elisha Winter, Secretary.''

This poster was likewise printed and circulated as the evidence shows by the joint action and consent of the Retail Merchants' Association and the Bostock-

Ferari Company. Plaintiff also introduced in evidence exhibit D, which is as follows:

"Bostock-Ferari Carnival Company, H. B. Potter, Gen. Agt. F. Ferari, General Mgr. D. A. McCann, Secretary and Treasurer."

Across the face, which was stamped by a rubber stamp: "(D. A. McCann.    Complimentary ticket, coupon not good if detached.)" Attached to this ticket on the margins thereof were coupons as follows: "Animal Show, German Village, Picture Show, House upside down, Cairo, Lady Athletes, Gondolas, Statues turning to life, Orient."

The testimony showed that this complimentary ticket was issued by defendant Bostock-Ferari Midway Carnival Company, with the consent of the Retail Merchants' Association, and upon presentation of such ticket the holder was entitled without charge to enter the various places of amusements mentioned in the margin, and that when one of such places was entered the coupon was punched, and so on until all the coupons were punched, if all the places were entered. That the Retail Merchants' Association had general charge and control of the whole grounds is fully shown by the testimony, and in fact is not disputed. That the Retail Merchants' Association, for a division of the proceeds which might arise from admission fee into the Midway and for admission to the various places of amusement in the Midway, had authorized and allowed the Bostock-Ferari Company to place such amusements in said grounds and to charge admission therefor is also established and in fact is practically admitted. Plaintiff, as shown by the evidence, gained admission to the grounds at Fifteenth street by paying or having paid for her the usual admission fee. Afterwards she gained admission to the Midway by paying or having paid for her the usual admission fee; and afterwards patronized the gondolas by paying or having paid for her

the usual fee for riding on the same. While patronizing these gondolas, the plaintiff was severely injured and disfigured as the testimony shows. There is substantial evidence that her injury was caused by the negligence of the persons in charge of those gondolas. The testimony shows that it was running at a high and unusual and dangerous rate of speed when the axle broke, and that the axle had a defect in it. Whether or not such conditions constituted negligence was, of course, for the jury. That this young lady's injuries were serious cannot be disputed.

The evidence in this case, aside from the contract offered in evidence, tends to show that the Retail Merchants' Association and the Carnival Company were both interested in the proceeds arising from the gondolas. At the close of plaintiff's evidence the court, at the request of all the defendants, instructed the jury that plaintiff was not entitled to recover. Whereupon plaintiff took a nonsuit, with leave to set the same aside. A timely motion to set the nonsuit aside was filed and taken up by the court and overruled and judgment was entered for the defendant. From this judgment, plaintiff in due time and proper form prosecuted her appeal to this court and the record is now before us for consideration.

## OPINION.

The record before us indicates substantially the facts as heretofore recited in the statement of this cause. The respondents have not favored this court with any suggestions, either by brief or in oral argument, indicating in any way the theory upon which the court sustained the demurrer to the evidence at the close of the case. The abstract of record as furnished by the appellant, as well as the statement predicated upon such abstract, seem to be unchallenged as to its correctness by the respondents; therefore, it simply

remains for us to announce our conclusions upon the propriety of the instructions given by the court at the close of plaintiff's evidence, telling the jury that the plaintiff was not entitled to recover.   As before stated, there has not been a suggestion on the part of the respondents indicating the theory upon which the instruction in the nature of a demurrer to the evidence was given in this cause—we are therefore left to make our own investigation of authorities which will support the action of the trial court.

We have carefully analyzed the evidence as disclosed by the record and have also directed our attention to the consideration of such authorities, after diligent search that we were able to find, which would in any way maintain the judgment as rendered in this case.   While we express no opinion as to the weight to be attached to the testimony as given by the witnesses, for that is exclusively the province of the jury, yet we are of the opinion that there was sufficient evidence introduced to take the case to the jury.   If the instruction in the nature of a demurrer was given in this case upon the theory that the defendants were engaged in a separate and distinct business and the fact that the show and amusements and the appliances connected therewith were provided and conducted by a corporation or persons independent of the Merchants' Association, and that the association was not the owner of the appliances upon which the accident occurred, then we say that under the evidence which clearly indicates that the Merchants' Association were interested in the exhibitions and amusements furnished, had general charge of all the grounds, participated in the proceeds from the appliances upon which this accident occurred, took an active part in the distribution of posters advertising the amusements, which at least must be construed as an implied invitation to the plaintiff and others to visit the ground under the control of the Retail

Merchants' Association, this instruction should not have been given.

In Fletcher v. Railroad, 1 Allen 9, and Shearman & Redfield on Negligence, 501, 504, which were referred to approvingly in Nagel v. Railroad, 75 Mo. l. c. 660, the rule upon the subject now under discussion was stated that, ''Ownership in such cases is not the test of responsibility, and that if enough appears to show that the party sought to be made liable had the property in his charge or under his control on which the nuisance complained of existed, it is sufficient.''

In Thompson v. Railroad, 170 Mass. 577, that court had in judgment before it a case involving a similar proposition to the case at bar. Under a statute in that State street railway companies were authorized to acquire, hold and equip real estate to be used for purposes of recreation and pleasure resorts, the admission being free. The defendant in that case secured ground and maintained such a place on the line of its railway which contained a large platform or stage for exhibitions. There was in that case, as the testimony tends to show in the case at bar, a contract with persons giving entertainments. The defendant paid for advertising these exhibitions and carried posters on its cars. The plaintiff Thompson having seen an advertisement was a spectator at the exhibition of marksmanship, having come on one of defendants' cars. All the appliances were furnished by the management of the performances and nobody in the defendant's employment exercised any control or supervision over the performances. At this exhibition of marksmanship the plaintiff received an injury to the eye. The Supreme Judicial Court of Massachusetts in disposing of the controversy thus clearly and we are of the opinion correctly announced the rule applicable to such cases. It was there said: ''The defendant asked for an instruction to the jury that it 'was not responsible

unless the exhibition was in its nature such that it would necessarily bring wrongful consequences to pass, unless guarded against, and the defendant failed to exercise due care to prevent harm.' The judge, instead thereof, instructed the jury that 'the defendant is not responsible unless the exhibition was in its nature such that it would necessarily or probably cause injury to some person present under the defendant's invitation, unless guarded against, and the defendant failed to exercise due care to prevent harm.' The fact that the exhibition was provided and conducted by an independent contractor would not wholly relieve the defendant from responsibility, provided it was of such a kind that it would probably cause injury to a spectator, unless due precautions were taken to guard against harm. [Curtis v. Kiley, 153 Mass. 123; Railroad v. Moore, 94 Va. 493; Railroad v. Morey, 47 Ohio St. 207; Hawver v. Whalen, 49 Ohio St. 69; Bower v. Peate, L. R. 1 Q. B. D. 321.] The instruction as given was right. But even under this rule the defendant contends that there was no evidence upon which the jury were justified in finding that the plaintiff was injured by any negligent act or omission on its part; or, in other words, that there was no evidence of any failure on its part to perform its duty in the premises. The question is suggested how far the defendant was bound to go in supervising the instruments and appliances used, and the other details of the exhibition. Should it be held to inspect the rifle and the cartridges, to see if they were safe? Without undertaking to go into unnecessary detail, it is apparent that there was evidence tending to show that the accident happened from a cause which might have been prevented, and that it ought to have been foreseen and guarded against by somebody, either by the defendant or by the manager; and the jury might come to the conclusion that in the general arrangements for an exhibition of this nature the butt

should be so placed that fragments which might fly from the impact of the bullets could not reach the spectators, and that due care was not taken in the arrangement of the stage with reference to possible accidents of this kind, and that the defendant itself failed in its duty in this respect. We cannot say that this was so much a matter of transitory detail that the manager alone was responsible for an omission to pay proper attention to securing the safety of spectators from such a risk. The case, therefore, was rightly submitted to the jury. Nor can it be held that the plaintiff assumed the risk. He might well rely on those who provided the exhibition and invited him to attend, to take due care to make it safe from such an injury as he received.''

Mr. Cooley, in his work on Torts (2 Ed.) p. 718, stated the law in this way: ''It has been stated on a preceding page that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.''

In the comparatively recent work of Buswell on Personal Injuries (2 Ed.), the law is well stated in section 66 as follows: ''If a person enters upon premises on business to be transacted with the owner or occupant thereof, or by the procurement of the owner or occupant; and, being himself in the exercise of due care, is injured by reason of the unsafe condition of the premises or the approaches thereto, such unsafe condition being known, or such as ought to have been known, to the owner or occupant, the latter will be answerable in damages for such injuries.'' And in section 70 he says: ''It is apprehended that the respon-

sibility of the owner or occupant of land or buildings is the same towards persons entering the premises, whether these come upon business to be transacted with the owner or occupant or at his solicitation, or upon his mere invitation; since, in any of these cases, the entry is by his procurement or inducement, and not by his mere acquiescence, or against his will." These principles are supported by numerous adjudications. [Nichols, Admr., v. Railroad, 83 Va. 99; Davis v. Central Cong. Soc., 129 Mass. 367, 37 Am. Rep. 368; Curtis v. Kiley, 153 Mass. 123; Powers v. Harlow, 53 Mich. 507, 51 Am. Rep. 154.]

The conclusions reached upon this proposition find further support in Railroad v. Moore, 37 L. R. A. 258, 94 Va. 493, and in Conradt v. Clauve, 93 Ind. 476.

In our opinion there was a sufficient showing of negligence in the construction, operation and management of the appliances to have authorized a submission of the cause to the jury. Having reached this conclusion it results that the judgment of the trial court should be reversed and the cause remanded. and it is so ordered.

All concur.