[Civ. No. 4392. Second Appellate District, Division Two.—July 18, 1925.]

## SARAH M. HARVEY, Appellant, v. EUGENE MACHTIG, Respondent.

[1] NEGLIGENCE—PUBLIC RESORT—COLLAPSE OF TREE UPON PARKED AUTOMOBILE—INJURY TO OCCUPANT—LIABILITY OF OWNER—EVIDENCE.—The owner of a public resort is liable in damages to a person who was injured by the collapse of a tree (upon which there was a platform) upon a parked automobile, of which such person was an occupant, where such tree was decayed and was within the exclusive control of said owner, and the driveway on which the automobile was parked was used by the patrons of the resort as a means of ingress and egress and also for parking purposes, and such person was upon the premises for the purpose of taking lunch at the owner's dining-room; and the facts that the driver of said automobile, in which said injured person was riding as a guest, was a concessionaire upon the premises of said owner, and that he had momentarily stopped his automobile near said tree for the purpose of delivering certain packages to his stand, before proceeding on his way to the dining-room of the resort, did not relieve the owner of the resort from such liability.

[2] ID.—LATENT DEFECTS IN CONTRIVANCES—DUTY OF OWNER.—It was such owner's duty to protect those whom he invited against injury from latent defects in contrivances maintained upon the premises which they were expected to frequent.

[3] ID.—CARE.—To use and keep in operation a device or apparatus upon which the safety of human life depends, without it being frequently or properly tested as to its continued strength and efficiency to meet the purposes for which used, is not such reasonable care as a prudent man should take to guard the safety of those entrusted to his protection.

[4] ID.—ERECTION OF STRUCTURES BY PREDECESSORS.—When such owner assumed control of the resort he became responsible for the safety of structures erected by his predecessors.

[5] ID.—DECAY OF TREE—ANTICIPATION OF FALL.—The facts that the dangerous condition of the tree was observed by others, that it was decayed, and that it fell on a calm, clear day, is indisputable evidence that it had been in the process of disintegration for so

1. Liability of resort owner for injuries to patrons, notes, 22 A. L. R. 610; 29 A. L. R. 29; 44 A. L. R. 203. See, also, 24 Cal. Jur. 560; 26 R. C. L. 713.

2. See 19 Cal. Jur. 618; 20 R. C. L. 55.

long a time that its impending fall should have been anticipated by the owner.

[6] ID.—CONTROL BY CONCESSIONAIRE—LIABILITY OF RESORT OWNER.— If such concessionaire had had control of the tree with the platform upon it as a part of his concession, still the owner would not be relieved from the duties and obligations incident to control of the entire resort.

[7] ID.—NEW TRIAL—EVIDENCE—APPEAL.—A trial court in passing upon a motion for a new trial is not bound by the findings of the jury if there is sufficient evidence to sustain a contrary finding; but where there is no evidence upon which a contrary finding could be founded, the order granting a new trial cannot be sustained upon appeal.

(1) 29 **Cyc.**, p. 451, n. 71, p. 454, n. 94, p. 466, n. 37. (2) 29 **Cyc.**, p. 453, n. 86. (3) 29 **Cyc.**, p. 455, n. 4, p. 472, n. 24, p. 473, n. 36. (4) 29 **Cyc.**, p. 477, n. 74. (5) 29 **Cyc.**, p. 468, n. 58. (6) 29 **Cyc.**, p. 432, n. 6, 7.

APPEAL from an order of the Superior Court of Ventura County granting a new trial. Merle J. Rogers, Judge. Reversed.

The facts are stated in the opinion of the court.

Drapeau, Orr & Gardner for Appellant.

Michael F. Shannon, Charles F. Blackstock and Thomas A. Wood for Respondent.

CRAIG, J.—Appellant sustained personal injuries while seated in an automobile which stood on the highway leading from the county thoroughfare to a public resort owned and conducted by respondent. For her damage thus sustained she instituted this action. A jury awarded her a verdict for five thousand dollars, and on motion of respondent a new trial was granted by the lower court upon the ground that the evidence adduced was insufficient to justify or sustain the verdict. From the order setting aside the verdict and judgment, and granting a new trial, the plaintiff appeals.

6. Proprietor's liability for injury to patron through fault of concessionaire, 22 A. L. R. 620.

7. See 20 Cal. Jur. 111; 20 R. C. L. 275.

Said resort is known as the Sulphur Mountain Springs, and immediately adjoins the main thoroughfare to Santa Paula, in the Ojai Valley, Ventura County. At some distance back from the county road the respondent operated a large dining-hall, dancing pavilion, swimming-pool, cottages, and various amusements. Ingress and egress to and from these attractions were available by means of a driveway about thirty feet in width, for the passage of vehicles, along which highway or drive were situated concessions for the sale of refreshments, etc., which were under the independent management of lessees who paid respondent a percentage of their gross receipts as rental.

On one side of respondent's said driveway stood a large black walnut tree, which was very old, the main trunk of which was trifurcated about three and one-half feet above the roadbed. The total spread of the tree was shown to have been about fifty feet, one of its three trunks growing nearly perpendicularly, another sloping away from the highway, and the third, which caused the accident, about three and one-half feet in diameter, extending out over the highway to a distance of about thirty feet.

Across the fork or space formed by the three trunks, and about twelve feet from the ground, a large platform had some years previously to respondent's purchase of the premises been constructed of logs, with a heavy railing or sidewall, and an improvised bench serving as a seat, also of logs, around three sides, all of which rested upon the three massive branches, and was fastened by a cable. Said platform was approximately fifteen feet square, and to the open side a stairway about five feet wide, with banisters, was constructed from the ground at the side of the highway. Respondent testified that said platform was provided and maintained for the accommodation and amusement of patrons of his resort, and that it was "one of the show places of the resort," from which they could "look over the entire premises"; that his guests would use the tree for entertainment in connection with the resort.

About fifteen feet to the north of this tree, which was estimated to have been fifty yards from the dining-hall, Rogers and Harvey, copartners, operated one of the concessions. They sold soft drinks, confectioneries and tobaccos. The

highway from the public thoroughfare, through respondent's premises, to the principal amusement center, extended directly past said tree and stand, and was somewhat wider at this point than elsewhere along its course, its border reaching to the base of the tree. Respondent testified that "it swayed in that way to some extent," but that "there was a water faucet to prevent them driving next to the tree"; that before approaching the tree, and beyond it, were parking places for automobiles, one of which consisted of an acre of space; but that machines were accustomed to park along the driveway, and to pass under the tree; that "all laws of etiquette were violated by people, how to park or to act." He admitted, however, that he had not objected to such custom.

On the morning of July 20, 1921, George Harvey, one of the concessionaires last mentioned, made a reservation at respondent's dining-room for an extra dinner for his grandmother, appellant herein, who resided at Santa Paula; he then proceeded to that city and purchased supplies for his concession, returning between the hours of 11 and 12 o'clock noon, of the same day, with his wife and appellant in his automobile. Harvey drove to the side of the road, and stopped his machine under the tree in question; he and his wife alighted, taking their packages to the stand, and leaving appellant seated alone in the automobile. He testified that he stopped merely for a moment to unload a few supplies, intending to continue his course up the driveway to the dining-room; that he did not enter his stand, but had just left the car and deposited his packages, and was starting back toward his machine, when he heard "a couple of little cracks," and saw the platform and tree-trunk nearest the highway fall upon the machine. Appellant was severely injured in the crash, which necessitated the amputation of her left arm; she was seventy-five years old, and previously to the accident was paralyzed on the right side.

This action was commenced by complaint alleging that respondent's place of business was a public resort, and that all the roads and highways upon the premises thereof were open to the public, and were used for the accommodation and to facilitate the ingress and egress of its patrons; that the walnut tree overhanging said driveway was decayed and

rotten and was unsafe; that the defendant knew it to be unsafe, and could easily and readily have discovered its dangerous condition by the exercise of reasonable care and diligence. The defendant joined issue upon the material allegations as to liability, but admitted that all of said roads and highways were open to the public, and were maintained by him to facilitate their ingress and egress; he alleged, however, that if said. roads and highways within his said resort were used for accommodation of the public as averred by the plaintiff, they were so used without his consent or invitation, and merely under license of the owner, and alleged that if the plaintiff was injured as she contended, her own carelessness contributed to and was the proximate cause of such injury.

The evidence tended to show, and it was not denied, that the decay had progressed to a degree rendering it plainly visible to the casual observer; that the tree was as much a part of the public amusement resort as any other feature thereof; that the highway in question constituted the only means of passage into the grounds, and that appellant when injured was on her way in the automobile in the direct and only possible route from Santa Paula to respondent's public restaurant or dining-hall, at the end of the driveway. It was shown that the tree fell on a calm, quiet summer day, when there was no wind, and that there was no one on the platform at the time. Seven witnesses called by the plaintiff testified regarding the condition of the tree, four of whom swore that it was decayed in the roots that protruded above the ground, some of them saying that from the platform above, a badly decayed spot in the crotch could also be seen, and some of them testified that when on the platform they found the tree "shaky," and came down. The witness Rogers testified that before the tree fell there was a spot of decay on one side about four inches by six inches, plainly visible from the ground, and it was further shown that the hole was so large that people playing games were accustomed to place their horseshoes therein. Rogers photographed the tree after the accident, and inspected it; he testified that it had been supported by a thin shell but a few inches thick and that four-fifths of the trunk was dead, the heart being gone. All of said seven witnesses testified

that until about July 1, 1921, there had been a sign about eighteen inches long nailed to the trees or stairway, bearing the words "Danger—Keep Out," or "Danger—Keep Off," and which some witnesses claimed to have seen there as late as July 4th. Respondent admitted that he had heard about the sign, but he strenuously denied having seen it or ordered it removed; he testified that he had carefully inspected the platform, but that he had never investigated to ascertain the condition of the tree; that nearly every evening he saw people on the platform, and that on one occasion there were as many as fifty people upon it at the same time.

[1] It is not contended that the evidence was not sufficient to establish the facts presented, but it is insisted that conceding all of said facts to be true, they did not constitute grounds upon which the respondent would be liable for damages, since he did not know that the tree was decayed, did not order Harvey to stop on his way up the driveway, and was not chargeable with the duty to ascertain that the tree was dangerous; wherefore, it is maintained, these facts established proof of carelessness of Harvey, and contributory negligence of the plaintiff who had entrusted herself to his care. It is argued that the automobile in which appellant was seated when injured had been "parked" on the side of the highway leading to respondent's resort, without right. The court below entertained and repeatedly expressed the same view, ruling that "the defendant cannot be held for something that he did not know."

It is at once inconsistent and futile to attempt the application of two incompatible principles of law to the same state of facts, by asserting on the one hand that the public, invited to traverse the sole means of approach to a public resort, were invited patrons, and on the other hand that they should be deemed and treated legally as trespassers or mere licensees if injured by the collapse of a defective device which constituted one of the attractions of such resort. Appellant was used by the public generally, without objection, and it should stop, and if so where, were questions not left to her judgment. The highway was wider at this point, but it was used by the public generally, without objection, and it cannot be said that because Harvey was a concessionaire and was induced to frequent the place by causes concurred in by

respondent, he should be denied privileges which were constantly extended to all other persons. The effect of respondent's argument is that the breaking of a defective attraction at his resort, with which neither Harvey nor the appellant had any concern, would be no fault of respondent if his concessionaire, in bringing him business, should incidentally interrupt the performance of that errand to facilitate the operation of the concession. Harvey testified that he invariably left his machine at that point when returning with supplies; and in this he followed the custom of those who patronized "one of the show places of the resort."

Respondent insists that the case falls within the rule announced in *Means* v. *Southern California Railway Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001], wherein it was said that "the plaintiff was not on the freight house premises to obtain any package from Wells, Fargo & Co. He had *changed his mind* about going to that office . . . "; and in *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal. App. 624 [174 Pac. 414], in which it was said: "We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience in no way connected with their business or their relations with the occupant"; and he quotes with assurance from *Kennedy* v. *Chase*, 119 Cal. 637 [63 Am. St. Rep. 153, 52 Pac. 33], as follows: "The duty of the owner in such a case has relation to the object for which the right of entry is extended and is limited to responsibility for the condition of that portion of the premises required for the *purpose* of the visit; it does not impose liability for the want of safety at a point *without those limits* and where the injured party was *neither invited nor expected to go.*" (Italics supplied.) But the injured party here was on her way to respondent's dining-room for the noonday meal, was on a part of the respondent's highway running through his resort, at a point continuously used by others when there for the same purpose; she was not there without invitation, nor for curiosity or motives of private convenience, unconnected with respondent's business. The authorities cited do not apply to the facts presented.

[2] It was respondent's duty to protect those whom he invited against injury from latent defects in contrivances maintained upon the premises which they were expected to frequent. [3] To use and keep in operation a device or apparatus upon which the safety of human life depends, without it being frequently or properly tested as to its continued strength and efficiency to meet the purposes for which used, is not such reasonable care as a prudent man should take to guard the safety of those entrusted to his protection. (*Burke* v. *State,* 64 Misc. 558 [119 N. Y. Supp. 1089].) Respondent had been operating the resort but about one month when the accident occurred; but he had visited it for years, and had done so frequently from 1919 until he took possession. [4] When he assumed control he became responsible for the safety of structures erected by his predecessors. (*Palmore* v. *Morris,* 182 Pa. 82 [61 Am. St. Rep. 693, 37 Atl. 995].) If the contingency were such that a secret cause of danger might grow and increase, and yet be hidden, it could not be assumed that, as matter of law, the defendant was not bound to do anything except use ordinary means to ascertain when danger was imminent and imperiled the safety of passers-by. (*Vosper* v. *New York,* 49 N. Y. Super. Ct. 296.) [5] The dangerous condition of the tree was observed by others, and the fact that it was decayed, and that it fell on a calm, clear day, is indisputable evidence that it had been in the process of disintegration for so long a time that its impending fall should have been anticipated by the respondent. (*Lundy* v. *Sedalia,* 162 Mo. App. 218 [144 S. W. 889]; *Rapho & West Hempfield Township* v. *Moore,* 68 Pa. St. 404 [8 Am. Rep. 202].)

Accepting, as we should, the strongest view of the case which the facts permit, in favor of the lower court's action in ordering a new trial—that appellant was in the care of a concessionaire, whose duty it was to proceed directly to her destination, that he stopped at one of the attractions, on one side of the principal driveway, and that this was unnecessary, and conceding that respondent was ignorant of the constant danger at that point—eliminating evidence which may have been conflicting—the result would be the same. [6] If it were shown that Harvey had control of

the defective amusement as a part of his concession, though this is not even intimated by respondent, still the latter would not be relieved from the duties and obligations incident to control of the entire resort. In *Johnstone* v. *Panama-Pacific Int. Expos. Co.,* 187 Cal. 323 [202 Pac. 34], the complaint alleged that the plaintiff, a visitor within the exposition grounds, was injured by an electric carriage belonging to a concessionaire while passing to another portion of the premises. A demurrer to the complaint was sustained, and upon appeal from such order the supreme court, quoting with approval from *Thornton* v. *Maine State Agr. Soc.,* 97 Me. 108 [94 Am. St. Rep. 488, 53 Atl. 979], said:

"It is too well settled to need the citation of authorities that, if the owner or occupier of land either directly or by implication induces persons to come upon his premises, he thereby assumes an obligation to see that such premises are in a reasonably safe condition, so that the persons there by his invitation may not be injured by them or in their use for the purpose for which the invitation was extended.

" 'Therefore, having invited the public to its fair, it was the duty of the defendant to use reasonable care to keep its grounds and the usual approaches to them, so far as the approaches were under its control, in a safe condition—safe for all who were invited. . . . The defendant would not be relieved from this duty by leasing portions of its grounds to the proprietors of shows and attractions, and becoming their landlord. As between it and the invited public, the duty still remained of using reasonable care to see that all of the exhibition grounds were safe.' . . . Even if it be true, as respondent insists, that there was no duty, as matter of law, resting upon it to provide separate thoroughfares for vehicles and pedestrians, there was a duty imposed upon respondent to use ordinary care to keep its grounds, including the thoroughfares, in a safe condition for its invitees, and the complaint alleged that respondent was under this duty. . . . As was held in *Whyte* v. *Idora Park Co.,* 29 Cal. App. 342 [155 Pac. 1018], and the other cases we have quoted, *the fact that the injury was inflicted by a concessionaire, and not by the proprietor,* would not relieve the latter of responsibility for the negligent acts which resulted in the injury, and, as was declared in *Thornton* v. *Maine*

*State Agricultural Society, supra,* it was the company's duty to use reasonable care 'both in the original letting of space, and in the subsequent inspection and supervision' of the concession.'' (Italics inserted.) .

It is contended by respondent that if he did not know that the tree was decaying, he could not be expected to guard against its possible collapse. But we are cited to no authority so holding upon facts even approaching in resemblance those here presented. Under the evidence adduced in the case at bar, it becomes apparent that to apply such a rule would possibly require that civil liability would arise only upon evidence strongly tending to show criminal negligence of the proprietor. But such is not the length to which an injured patron must go in order to recover for damage sustained at a resort which is thrown open to the public and to which he is both impliedly and expressly invited. The rule announced in the case from which we have quoted is recognized and applied generally. (*Hollis* v. *Kansas City, Missouri, Retail Merch. Assn.,* 205 Mo. 508 [14 L. R. A. (N. S.) 284, 103 S. W. 32]; *Texas State Fair* v. *Brittain,* 118 Fed. 713 [56 C. C. A. 499]; *Texas State Fair* v. *Marti,* 30 Tex. Civ. App. 132 [69 S. W. 432]; *Richmond & M. R. Co.* v. *Moore,* 94 Va. 493 [37 L. R. A. 258, 27 S. E. 70]; *Thompson* v. *Lowell, L. & H. St. R. Co.,* 170 Mass. 577 [64 Am. St. Rep. 323, 40 L. R. A. 345, 49 N. E. 913]; *Graffam* v. *Saco Grange, Patrons of Husbandry,* 112 Me. 508 [L. R. A. 1915C, 632, 92 Atl. 649].) In most of the cases here cited the offending object or apparatus was shown to have even been in the possession, control and management of a concessionaire, but in each instance the proprietor of the resort was held to have been charged with the duty to inspect, and to guard against injury to patrons drawn thereto by the general enterprise. The tree in controversy here, however, was of no concern to Harvey, but was admittedly under the exclusive custody, control and management of the proprietor, respondent herein.

Section 957, subdivision 6, of the Code of Civil Procedure, provides that a new trial may be granted upon the grounds of ''insufficiency of the evidence to justify the verdict or other decision, or that it is against law.'' It must be conceded that if the undisputed facts in the instant case show

the verdict and judgment rendered to have been the only result warranted by the evidence—and the authorities cited impel us to that conclusion—in such event the verdict was not, as held by the court below, unsupported by the evidence nor against law, and should not have been set aside and a new trial ordered. [7] We are not unmindful of the reluctance with which appellate courts reverse orders granting or refusing new trials, nor of the rule that a trial court in passing upon such a motion is not bound by the findings of the jury if there is sufficient evidence to sustain a contrary finding (*Huckaby* v. *Northam*, 68 Cal. App. 83 [228 Pac. 717]). Where, as here, however, there is no evidence upon which a contrary finding could be founded, the order granting a new trial cannot be sustained upon appeal. As was said in *Huckaby* v. *Northam, supra,* in which an order granting a new trial as to certain defendants was upheld upon the ground that as to them the evidence was conflicting, but was reversed as to others: "The evidence shows clearly that the other defendants have no interest in the property. The order granting a new trial was therefore erroneous as to such defendants."

The order granting a new trial, and vacating and setting aside the verdict and judgment, is, therefore, reversed.

Finlayson, P. J., and Works, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 14, 1925.