[Civ. No. 7381. First Appellate District, Division One.—January 27, 1931.]

FREDONIA J. MOSS, Respondent, v. A. D. STUBBS et al., Appellants.

DAVID S. PRATT, a Minor, etc., Respondent, v. A. D. STUBBS et al., Appellants.

Thomas J. Straub, J. C. Wood and Alden Ames for Appellants.

Everette C. McKeage for Respondents.

THE COURT.—The plaintiff, David S. Pratt, nine years of age, through his guardian *ad litem,* brought an action for damages on account of personal injuries he sustained as a result of being struck by a Ford truck owned by the defendant Pacific Gas & Electric Company and driven by the defendant A. D. Stubbs; and his mother Fredonia J. Moss, brought a similar action against the same parties to recover the

amount of damages she claimed to have suffered as a result of the accident, including loss of services. The actions were consolidated and tried before a jury. Motions for nonsuit and directed verdicts were made by defendants, and denied; and the jury returned separate verdicts in favor of defendants. Following the entry of judgments thereon plaintiffs presented motions for new trial, which the court granted; and from the orders made in that behalf defendants have taken these appeals.

The orders are identical in form and read in part as follows: "First: That plaintiff's instruction No. 13 was withdrawn by counsel with the understanding that the court would read from the California Vehicle Act the sections regarding the blowing of a horn referred to in said instruction which through some inadvertence the court did not do, but did read other sections of the California Vehicle Act embraced in said instructions. Second: That it is the belief of the court that the plaintiff has not had a fair trial. Third: That the court is of the opinion that the verdict of the jury is contrary to the weight of the evidence. It is therefore ordered that the motion for new trial in each case be granted, on the ground of errors of law occurring at the trial and insufficiency of the evidence to warrant the verdict."

The well-settled rule is that the matter of granting or refusal to grant a motion for a new trial is largely within the discretion of the trial court (*Work* v. *Whittington,* 61 Cal. App. 302 [214 Pac. 474]); that in passing upon such motion the trial court is not bound by the rule of conflicting evidence as is the appellate tribunal (*Huckaby* v. *Northam,* 68 Cal. App. 83 [228 Pac. 717]; *Smith* v. *Royer,* 181 Cal. 165 [183 Pac. 660]); but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Rudin* v. *Luman,* 53 Cal. App. 212 [199 Pac. 874]); and if it is satisfied that the finding of the jury is contrary to the weight of the evidence it may grant a new trial (*Gordon* v. *Roberts,* 162 Cal. 506 [123 Pac. 288]). Even where the evidence is not conflicting and all the proof seems to be favorable to one or the other of the parties litigant, the question of the probative force or the evidentiary value of the testimony is nevertheless within the determina-

tion of the trial court in a proceeding on motion for a new trial. (*Otten* v. *Spreckels,* 24 Cal. App. 251 [141 Pac. 224]; *Roberts* v. *Southern Pac. Co.,* 54 Cal. App. 315 [201 Pac. 958].) ▮ But it is equally well settled that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained (*Springer* v. *Pacific Fruit Exchange,* 92 Cal. App. 732 [268 Pac. 951]; *Wendling Lbr. Co.* v. *Glenwood Lbr. Co.,* 153 Cal. 411 [95 Pac. 1029]; *Empire Inv. Co.* v. *Mort,* 169 Cal. 732 [147 Pac. 960]; *Harvey* v. *Machtig,* 73 Cal. App. 667 [239 Pac. 78, 82]). As will hereinafter appear, there is no substantial conflict in the evidence as to any of the essential facts relating to the manner in which the accident happened; and the determinative question presented with reference to the evidence, is, therefore, whether as a whole it would be sufficient as a matter of law to support verdicts in favor of plaintiffs, in the event that such verdicts had been found.

The accident happened on the lower or westerly one-way traffic lane of Arlington Avenue, some distance south of the intersecting line of San Fernando Avenue, in the city of Berkeley, about 3 o'clock in the afternoon. Arlington Avenue is constructed along the side of a hill for a considerable distance and in the vicinity of the accident is divided by a parkway into two one-way paved traffic lanes. The lower or westerly lane accommodates the south-bound traffic, and the grade thereof, which descends slightly toward the south, is about ten feet lower than the roadbed of the upper or easterly lane, which takes care of the north-bound traffic. Both lanes are constructed on a curve. The width of the lower lane between curbs is twenty-seven feet, and it is intersected by San Fernando Avenue, which extends into but not beyond the upper lane. The parkway is sixteen feet wide, and is planted to trees and shrubs, but, as indicated, it is intersected by San Fernando Avenue so as to make the latter accessible to the traffic using the upper lane. Along the inside of the lower or westerly lane is laid the single track of a street-car company, over which it operates its north and south bound cars. The outer or westerly rail is laid about eight feet distant from the easterly bank, but just how close to the bank the inner rail is laid does not appear. Stubbs

was traveling along the center of the lower traffic lane in a southerly direction, and was about to pass between a street-car approaching in the opposite direction on his left and a parked automobile on his right, when the boy, who had just descended the hill to the street and paused at the edge of the bank to let the street-car pass, suddenly ran out from behind the street-car into the pathway of the on-coming truck, intending to cross the street, and was struck by the front wheel of the truck. He was knocked unconscious and besides being bruised about the head and face suffered a fracture of both bones of the leg below the knee. On account of the presence of the street-car, the boy and Stubbs were unable to see each other until the boy emerged from behind the street-car, at which time they were within a few feet of each other. Stubbs brought his truck to a stop within a few feet beyond the point of the impact, picked up the boy, and leaving his truck there in the street, accompanied the boy to the hospital, in an automobile belonging to another man.

The foregoing facts showing the manner in which the accident happened were established by the testimony of five witnesses, two of whom were the boy and Stubbs, the others being a man named Martin and two women, Mrs. Young and Mrs. Porter, all of whom happened to be driving along the upper or easterly lane of Arlington Avenue. The boy testified that on the afternoon in question he left the private school he was attending, located up the hill above Arlington Avenue, descended the steps down the hillside, crossed the upper lane of Arlington Avenue, ran across the parkway, and "sort of skidded" down the bank to the curb of the lower lane, which is adjacent to the bank; that he reached the curb just as a north-bound street-car was passing. Continuing, he testified as follows: "Q. And after the car had passed, did you attempt to cross the street? A. Yes. Q. Were you running across the street? A. I looked first and then I ran, but because the car was there I couldn't see Mr. Stubbs coming down with his truck." And on cross-examination he testified: "Q. When you left this point 'P-2' [the easterly curb of the lower lane] you went right across. Did you run or did you walk? A. I looked and then I ran. Q. So you ran right across? A. Yes. Q. Really in front of the automobile, didn't you? A. Yes." He further

testified that he first observed the truck as he emerged from behind the street-car, at which time the truck was about six feet away from him, but that he continued on his course across the street, and was hit.

The material portions of Martin's testimony were as follows: "Well, when the boy ran down through this parkway space he had to slide and brace himself and wait for the car to pass. Just as this took place, I saw the Ford coming, when the boy ran down and waited for the street car, and the moment it passed him he started across the street. In darting across, which was faster than the eye almost, I saw the left wheel in the front strike the boy, roll him up, and he came out under the rear of the Ford. . . . Q. What the jury wants to know is what you saw? A. Well, the street-car was coming parallel with me, naturally I could look down on the roof of it as there is an elevation of six feet or better. You can see practically over the roof of the car. I saw the Ford truck belonging to the Gas Company coming down. The boy could not see it. I could see it. And in looking over and seeing what was going to take place I stopped my car, because I saw exactly the position of the parties and the cars. And when the boy came around the end of the street car he was right within a few feet of the front of the Ford car. Q. He was exactly in front of the Ford car a few feet? A. No, I don't call it that. The boy was running and he could cover the distance between the rear of the street car and where the Ford hit him, and was so quick that it was just a flash. Therefore, it is hard for me to determine the distance between the end of the street car and the Ford car, it was so very minute." Mrs. Young and Mrs. Porter were riding in the latter's automobile; and Mrs. Young's description of the accident was as follows: "He [the boy] came right across Arlington, coming down the bank and he stood there and hesitated a moment and waited for the car to pull down the switch here. Then he ran out from behind the car and the Ford car was coming along down in here, along the lower Arlington, when he ran out from behind the street car into the path of this Ford car. Q. When he ran out from behind the street car how far, as nearly as you can recollect, was the Ford car away from that particular point? A. Well, I would not say as to feet, because I was in the car. But it was right close. I could

see when he darted behind the car that he was going to be hit. I could see there wasn't any way that the driver had that he could possibly avoid hitting him. . . . It all happened so quickly that by the time the child ran from behind the car he was right in front of his car. I couldn't say in feet because it all happened in a flash. I could see he was going to be hit and in the excitement and all you could not stop to figure feet. · I know he just ran right in front of the car. Q. But the distance was very close? A. Very close. He was very close to the car, ran right into it.'' Mrs. Porter testified: ''Well, I didn't see a great deal of it, because I was driving; but as I came around the turn I saw the little boy run across the street. And he crossed the drive, and I didn't see anything else until I saw him fall in back of the truck.'' Stubbs' testimony was to the effect that as he was traveling southerly along the lower lane he saw the approach of the street-car more than 200 feet distant from him; that he was following a course down the center of the lane in order to pass between the car and an automobile parked along the right-hand curb; that just as the front end of his truck reached a point opposite the rear end of the street-car he saw the boy for the first time emerging from behind the car; that the boy was then only three feet distant from the left front end of the truck, running across the street directly in the pathway of the truck, and that he was struck by the left front wheel.

█ The foregoing is in substance all of the evidence relating to the manner in which the accident happened, and in our opinion it would have been wholly insufficient as a matter of law to support verdicts in favor of plaintiffs, if such verdicts had been rendered, for the reason that, regardless of all question of contributory negligence, it utterly fails to establish any negligent act or omission on the part of the driver of the truck or any facts from which an inference of negligence could be fairly and reasonably drawn. As will be observed the proof is not confined to the testimony of any particular witness. All five agree as to the essential facts; and consequently, even though the testimony of Martin and Stubbs be disregarded entirely, as plaintiffs claim it should be, the testimony given by the remaining witnesses, including that of the boy himself, fails to establish any facts upon which a finding of negligence could be reasonably founded.

Stubbs testified that the accident happened about 200 feet south of the southerly intersecting line of San Fernando Avenue and the plaintiffs claim that on this point he was contradicted by the testimony of Mrs. Young. The record shows that on cross-examination she was asked by counsel for plaintiffs how far it was from the point where the boy was standing when the street-car passed to the southerly intersecting line of San Fernando Avenue, that is, the north end of the parkway, and she replied: "Well, I don't know, because I never paid much attention to the park there, but I should imagine around 50 feet. I should think it was about that far, but I had never paid much attention. Q. So you would say then that the boy was struck about 50 feet or so south of this line? A. Yes." Even assuming that the answer given was sufficiently definite to raise a substantial conflict on the point, it would seem to be entirely immaterial so far as the cause of the accident was concerned, whether it happened fifty feet or more south of the intersecting line of San Fernando Avenue.

■ Section 113 of the California Vehicle Act (Stats. 1927, p. 1436, sec. 30) provides, among other th'ngs, that it shall be unlawful for the driver of a vehicle to drive the same at a speed greater than fifteen miles an hour (b, 2) in traversing an intersection of highways when the driver's view thereof is obstructed in such a way that during the last 100 feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic entering such intersection for a distance of 200 feet from such intersection; or (b, 3) in traversing or going around curves or corners of a highway when the driver's view is obstructed within a distance of 200 feet along such highway in the direction in which he is proceeding; or (b, 4) when passing a school while persons are entering or leaving the grounds of such school. And plaintiffs contend that there is evidence to show that Stubbs violated said provisions and consequently was guilty of negligence as a matter of law. We are unable to agree to such contention. Stubbs testified that he crossed the intersection at a speed not greater than fifteen miles an hour, and then increased his speed slightly so that when he first saw the boy running out from behind the car he was traveling eighteen or twenty miles an hour; and the only other testimony as to speed was

that given by Mrs. Young and Martin, which, so far as it goes, supports the statement of Stubbs. In this regard Mrs. Young testified that Stubbs was traveling "approximately around 15 miles an hour"; and Martin testified that when he first saw the truck, which was then south of the intersecting line he "would say" that it was traveling between eighteen and twenty miles an hour; but that he could not "truthfully say" because he was "not a very good judge of anything like that". ■ ·Nor does the fact that Stubbs was traveling eighteen to twenty miles an hour south of the intersection establish a violation of either of the other two provisions of said section 113, for the reason that the physical conditions therein described were not shown to exist at the place of the accident. True, testimony was given to the effect that there was "a radius on the street of about 126 degrees" and that standing *at a point fifty feet north of the northerly intersecting line of San Fernando Avenue* it was impossible to obtain an unobstructed view 200 feet ahead; but no testimony whatever was introduced to show that from the southerly intersecting line of said avenue from which point Stubbs stated he increased his speed to eighteen or twenty miles an hour, the view ahead is obstructed within a distance of 200 feet. And as to the second point the evidence shows without dispute that the grounds of the private school are not adjacent to the street on which the accident occurred.

■ Stubbs admitted that he did not sound his horn on approaching the scene of the accident, and it is claimed therefore that he violated the provisions of section 139 of said act (Stats. 1923, p. 562). But as will be observed from the heading given said section, "mountain driving", as well as from the terms of the section itself, its provisions apply to the operation of vehicles "through defiles and canyons or over mountain highways", which is not this case. It may be conceded, of course, that wheresoever a person may be driving, circumstances might arise which would require the driver, as a reasonably prudent person, to sound warning of his approach, but no such circumstances existed here. The truck was being driven along a one-way city street, within the block, in the middle of the afternoon, where there was no pedestrian or vehicular traffic in sight except the street-car. There was no danger whatever apparent, and therefore, under such circumstances it cannot be fairly maintained that

a duty was imposed upon the driver of the truck as a reasonably prudent person to sound his horn.

Plaintiffs argue also that if Stubbs had been driving in a careful manner he doubtless would have seen the boy descending the steps; but the evidence shows that the steps were visible only from certain points along the lower lane, and no proof was introduced to show that the boy was descending the steps at the particular time the steps could have been seen from the lower lane. Moreover, it would be unreasonable to assume that a prudent and careful driver would have been looking along the side of the hill and away from the highway when he was about to pass between an approaching street-car and a parked automobile in a narrow street. Plaintiffs make the further point that Stubbs was guilty of negligence in not traveling along the right-hand side of the street; but it must be remembered that this was a one-way traffic lane and that he was about to pass between the street-car and the parked automobile, which made it necessary, as he stated, for him to follow a course down the center of the street.

The state of the evidence in the present case is entirely different from the one presented in *Conner* v. *Henderson*, 108 Cal. App. 237 [291 Pac. 641, 642], cited by plaintiffs, for the reason that there the evidence as to the manner in which the accident happened was sharply conflicting. In this regard the court said: "The case presents a clear conflict in the evidence. Viewed from the standpoint of plaintiff's witnesses, the negligence of defendants was unquestioned. Viewed from the standpoint of defendants' witnesses, the plaintiff by her actions in suddenly darting from behind the truck directly into the path of the oncoming machine rendered the accident unavoidable and gave defendants no opportunity to avert the injury." The case of *Off* v. *Crump*, 40 Cal. App. 173 [180 Pac. 360], is cited by plaintiffs as supporting their contention that Stubbs was negligent in failing to see the boy until he was within three feet of him. But unlike the facts of that case, the evidence here shows without dispute that the boy was completely hidden behind the street-car until the truck was within a few feet from him.

And the fact that the court inadvertently omitted to read section 139 of the California Vehicle Act to the jury did not furnish grounds for granting a new trial, for as

already pointed out the provisions of said section were not applicable here; and it has been repeatedly held that· it is improper to read to a jury a section of said act having no bearing upon the facts of the particular case. (*O'Meara* v. *Swortfiguer*, 191 Cal. 12 [214 Pac. 975]; *Dewhirst* v. *Leopold*, 194 Cal. 424 [229 Pac. 30]; *Lower* v. *Hughes*, 80 Cal. App. 444 [251 Pac. 952].) The case of *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066], cited by plaintiffs, is not in point for the reason that it involved the provisions of an earlier vehicle act which were different from those contained in section 139 as it stood at the time this accident happened.

 Plaintiffs further contend that the trial court erred during the course of the trial in commenting on the evidence in the presence of the jury, while plaintiffs' counsel was arguing the motion for a nonsuit; also in giving and refusing to give certain instructions. But in view of the inevitable conclusion that the evidence would be legally insufficient to support verdicts in favor of plaintiffs, it is useless to inquire into or determine these latter points because even though the remarks complained of had not been made, and the jury had been instructed as plaintiffs claim it should have been instructed, and verdicts had been rendered in their favor, the evidence would still be insufficient as a matter of law to sustain such verdicts. In other words, the question of the legal sufficiency of the evidence cannot be affected in any manner by the trial court's comments on the evidence or its instructions as to matters of law. As held in *Hamlin* v. *Pacific Elec. R. Co.*, 150 Cal. 776 [89 Pac. 1109, 1112], cited approvingly in *Mintzer* v. *City of Richmond*, 27 Cal. App. 566 [150 Pac. 799], to avail himself of the point that an instruction is erroneous, a party must bring before the court sufficient evidence to show that upon a proper instruction there might have been a finding in his favor; and if he does less than this he presents for consideration a mere question of abstract error. In other words, to quote the language of the court, as applied to the facts of that case: "He was therefore not harmed by the action of the court in submitting this question to the jury on erroneous instructions, since there was no evidence which would have sustained a finding in his favor under the view of the law most advantageous to him."

As said by the court in *Harvey* v. *Machtig, supra,* in directing a reversal: "We are not unmindful of the reluctance with which appellate courts reverse orders granting or refusing new trials, nor of the rule that a trial court in passing upon such a motion is not bound by the findings of the jury if there is sufficient evidence to sustain a contrary finding (*Huckaby* v. *Northam,* 68 Cal. App. 83 [228 Pac. 717]). Where, as here, however, there is no evidence upon which a contrary finding could be founded, the order granting a new trial cannot be sustained upon appeal."

The orders appealed from are reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 26, 1931, and the following opinion then rendered thereon:

THE COURT.—In passing upon respondents' petition for rehearing herein, it may be stated that we have given due consideration to the two "diagrams" upon which they place so much emphasis; but a casual inspection of them will show that neither by themselves nor in connection with the testimony can they be of any value whatever in establishing any of the points urged by respondents in their petition, for the reason that said diagrams are merely rough crayon sketches made by the witnesses in court, while testifying; and it is not pretended that said witnesses are skilled in engineering or draftsmanship, nor that the maps were drawn to scale nor correctly describe the conditions existing at the scene of the accident, either as to courses, distances, or directions.

Rehearing denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.